**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HERITAGE HOLDING CO., LLC, a Pennsylvania limited liability company, | ) ) ) | |
| Plaintiff, | ) | Civil Action No. 2:24-cv-1448 |
| | ) | |
| v. | ) ) | |
| KTRV, LLC, | ) ) | |
| Defendant. | ) ) | |
| | ) | |
| BANSHEE INDUSTRIES, LLC, a Pennsylvania limited liability company, | ) ) ) | |
| Plaintiff, | ) | Civil Action No. 3:24-cv-233 |
| | ) | |
| v. | ) ) | |
| HERITAGE COAL & NATURAL RESOURCES, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**BRIEF IN OPPOSITION TO MOTIONS FOR REMAND BY**
**DEFENDANTS HERITAGE COAL & NATURAL RESOURCES, LLC AND KTRV, LLC**

  Defendant Heritage Coal & Natural Resources, LLC ("HCNR") and Defendant KTRV, LLC ("KTRV") respectfully submit this brief in opposition to the motions (the "Motions") for remand filed by (1) Plaintiff Banshee Industries, LLC ("Banshee") in Civil Action No. 3:24-cv-233 at ECF Nos. 34, 35 and (2) by Plaintiff Heritage Holding Co., LLC ("HHC") in Civil Action 2:24-cv-1448 at ECF Nos. 13, 14.

## I.    INTRODUCTION

Angela Svonavec ("Angela") "is a native of Somerset County, PA."[1] She was born and raised in Western Pennsylvania, and she and her husband, Jason Svonavec ("Jason"), have lived in Rockwood, Pennsylvania for decades.[2] Jason, who Angela says is the "love of [her] life" and from whom Angela has never been separated during their over 22 years of marriage, is a citizen of Pennsylvania.[3] Angela's two children, Sydney and Spencer, grew up going to schools in Pennsylvania and are citizens of Pennsylvania.[4] Angela owns or manages numerous businesses based in Western Pennsylvania, including a cattle farm ("Banshee Farms"), a coal distribution company ("Banshee Industries"), and a construction/excavation equipment company ("Fearless Leasing"), all of which are based in Somerset County and whose customers are in Pennsylvania or surrounding areas.[5] Angela and Jason built a 7,300 square foot home for their family at 192 Stone Ridge Lane, Rockwood, Pennsylvania in 2018 that they co-own.[6] Angela and Jason have consistently referred to Western Pennsylvania, and Somerset County in particular, as their "local community."[7] Indeed, numerous character witnesses at Jason's sentencing hearing on August 14, 2024 in connection with his conviction for tax fraud testified passionately about Jason's and Angela's involvement in, and support for, their local community of Somerset County,

---

[1] Ex. 1, February 10, 2021 Greater Cumberland Community Angela Svonavec Article at 3; Ex. 2, Angela Dep. at 63:14-64:10.

[2] Ex. 2, Angela Dep. at 5:21-6:11; *id.* at 8:2-10 (Angela admitting she returned to Rockwood, Pennsylvania in approximately 1998 after schooling).

[3] Ex. 3, Plaintiff Banshee's Responses to Requests for Admission ("RFAs") No. 3 at p. 11; Ex. 4, Jason's Sentencing Memo. at 117; Ex. 2, Angela Dep. at 31:12-14.

[4] Ex. 3, RFAs Nos. 6–7 at pp. 12–13; Ex. 2, Angela Dep. at 51:10-52:6; *id.* at 59:4-20.

[5] Ex. 2, Angela Dep. 36:21-49:15.

[6] Ex. 3, RFAs No. 9 at p. 14; Ex. 5, Gov't Sentencing Memo. at 3, 10–16.

[7] *See, e.g.,* Ex. 4, Jason's Sentencing Memo. at 118 (Angela telling Judge Bissoon that "I believe our local community needs Jason").

Pennsylvania.[8] A representative of the Rockwood Alliance Church even submitted a letter stating that Jason's family has attended the church "for many years."[9]

Despite Angela's lifelong residency and citizenship in Pennsylvania, the Svonavecs launched a tax avoidance scheme in 2014 by exploiting what the IRS has characterized as their "second home" in Florida.[10] The Svonavecs sought to establish Angela's domicile in Florida so they could claim the Florida house as Angela's "office" and thereby take deductions for expenses related to the house.[11] To that end, Angela compiled a residency checklist of steps necessary to pull off the scheme.[12] Following her residency checklist, Angela set about to paper over her claim to Florida "residency" by, among other things, purchasing a house in Florida, altering her residency status in some, but not all, tax filings, obtaining a Florida driver's license, registering to vote in Florida, and filing a Declaration of Domicile in Florida — all of which she did according to plan.[13]

Angela's alleged Florida domicile is, was, and always has been, sheer pretext. The IRS saw right through the scheme from the beginning. After Angela first claimed Florida domicile in 2014, the IRS audited the Svonavecs for the 2015 and 2016 tax years and caused the Svonavecs to pay approximately $1,652,452 in disallowed personal expenditures characterized as business

---

[8] *See, e.g.*, Ex. 6, Transcript of Jason's Sentencing Hearing at 29:8-30:20; *id.* at 45:25-46:14 (School Superintendent for the Rockwood Area School District testifying "I've known Jason and Angie for 20 years as a parent, community member, business owner, employee of many folks in our district"); *id.* at 49:19-50:2.

[9] Ex. 4, Jason's Sentencing Memo. at 113, 115 (Rockwood Alliance Church treasurer writing to Judge Bissoon that "[h]is family has attended this church for many years and have been active members of the community"); Ex. 2, Angela Dep. at 86:6-15 (Angela affirming the accuracy of the Rockwood Alliance Church treasurer's statement to Judge Bissoon).

[10] Ex. 7, IRS Examination Report at 70, 129.

[11] *Id.* at 13.

[12] Ex. 8, Andersen Firm Residency Checklist.

[13] Ex. 7, IRS Examination Report at 71.

expenses.[14] The IRS explicitly found that the Svonavecs, among other things, (i) caused one of their companies to pay the expenses of the Florida house and to deduct such expenses on its books to offset income generated from the 2014 sale of the company's airplane; (ii) caused multiple of their companies to pay Angela "rent" ostensibly for use of the Florida house as Angela's office which was deducted as a business expense by the company and on which Angela did not pay state income tax by claiming residency in Florida; and (iii) caused one of their companies to pay Angela a management services fee which again was deducted as a business expense by the company and on which Angela did not pay state income tax by claiming residency in Florida.[15]

The Svonavecs have not attempted to deny the use of their Florida house as the instrumentality of their fraudulent tax avoidance scheme. When the IRS challenged the legitimate business purpose of claiming the Florida house as Angela's "office" when all of the Svonavecs' businesses were located in Pennsylvania, all functions of those businesses (e.g., invoicing, banking, bill paying) were done from Pennsylvania, and the income reported came from customers in Pennsylvania, the only purported business purpose the Svonavecs gave for Angela having a Florida office was "the state tax savings enabled thereby."[16]

Now, the Svonavecs double-down on their Florida residency gambit with this Court. The Svonavecs do not want to litigate these cases in federal court — ironically choosing to file the Banshee case in the Somerset County Court of Common Pleas despite repudiating Angela's residency in Somerset County — so they again attempt to exploit their Florida house to claim that Angela supposedly is a Florida citizen. The facts, however, demonstrate that Angela remains a resident and citizen of Pennsylvania, like always.

---

[14] Ex. 5, Gov't Sentencing Memo. at 2.

[15] Ex. 7, IRS Examination Report at 13–16, 70, 129.

[16] *Id.* at 13–14, 63.

In asserting that Angela supposedly changed her domicile and citizenship from Pennsylvania to Florida in 2014, the Svonavecs must overcome the "strong presumption in favor of retaining prior domicile." *Reedy v. Toomey*, No. 23-cv-726, 2023 WL 4867995, at *4 (W.D. Pa. July 31, 2023). "The effect of this presumption is to put a *heavier burden* on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one." *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011) (quoting 13B Charles Alan Wright, Arthur Miller & Mary Kay Kane, Federal Practice & Procedure § 3612 (3d ed. 2005) (emphasis in original)). The Motions fail to overcome this "strong presumption" in favor of Angela's Pennsylvania citizenship.

With Angela's Pennsylvania citizenship established, both Banshee's and HHC's Motions fail. It is undisputed that Angela is the sole member of HHC and consequently HHC is a citizen of Pennsylvania. Banshee is likewise a Pennsylvania citizen either because (i) Jason is actually the sole member of Banshee, as demonstrated below, or (ii) assuming *arguendo* Angela is the ultimate sole member of Banshee, she is a Pennsylvania citizen as well. Given the Pennsylvania citizenship of the two plaintiffs, and the undisputed New York and Florida citizenship of the two defendants, complete diversity of citizenship exists for both cases. The Court should therefore deny both Motions.

## II.    PROCEDURAL HISTORY

Banshee filed a complaint in the Somerset County Court of Common Pleas against HCNR on October 1, 2024, which HCNR removed to federal court on October 7, 2024.[17] Banshee filed a motion to remand on October 8, 2024 and an amended motion on November 18,

---

[17] Case No. 3:24-cv-233 ECF No. 1 at ¶ 1. HCNR filed an amended notice on October 17, 2024 to correct certain information regarding the membership list of HCNR's single member, KTRV. Case No. 3:24-cv-233 ECF No. 17 at ¶ 6. The amended notice did not affect the basis for diversity jurisdiction asserted in HCNR's original notice of removal. *Id.*

2024.[18] In a separate case, HHC filed a complaint against KTRV in the Allegheny County Court of Common Pleas on September 27, 2024, which KTRV removed to federal court on October 17, 2024.[19] HHC filed a motion to remand on October 23, 2024.[20]

Banshee's Motion asserts that the membership interest in Banshee was assigned to Angela's Interest LLC of which Angela is the sole member. Both Motions assert that Angela is a citizen of Florida, a fact that would, if true, destroy diversity of citizenship because one member of each of the defendants is also a citizen of Florida. Both assertions are wrong.

### III.    LEGAL STANDARD

The Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different states." 28 U.S.C. 1332(a).[21] Diversity of citizenship must exist "both at the time the . . . state court complaint was filed and at the time of removal." *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 150–51 (3d Cir. 2017).

### A.    The Citizenship of the Parties

"[T]he citizenship of an LLC is determined by the citizenship of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Further, "where an LLC has, as one of its members, another LLC, 'the citizenship . . . must be traced through however many layers of . . . members there may be' to determine the citizenship of the LLC." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 n.16 (3d Cir. 2016).

---

[18] Civil Action No. 3:24-cv-233 ECF Nos. 12, 13, 34, 35.

[19] Case No. 2:24-cv-1448 ECF No. 1 at ¶ 1.

[20] Civil Action 2:24-cv-1448 ECF Nos. 13, 14.

[21] The face of both complaints show that the amount in controversy exceeds $75,000, and neither plaintiff contests this fact in their motions to remand. Case No. 3:24-cv-233 ECF No. 17 ¶ 15; Case No. 3:24-cv-233 ECF Nos. 13, 35; Case No. 2:24-cv-1448 ECF No. 1 ¶¶ 11–19; Case No. 2:24-cv-1448 ECF No. 16.

Plaintiff HHC is an LLC, and it asserts that Angela is its sole member.[22] Plaintiff Banshee contends (wrongly) that "Angela's Interest LLC" is its sole member and that Angela is the sole member of Angela's Interest LLC.[23] On the defense side of the equation, it is undisputed that the ultimate members of HCNR[24] and KTRV (both LLCs) are citizens of New York and Florida.[25]

## B.    Angela's Citizenship

"A natural person is deemed to be a citizen of the state where he is domiciled." *Zambelli Fireworks Mfg. Co.*, at 419. "Citizenship is synonymous with domicile, and the domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006) (internals omitted). "The terms 'resident' and 'domicile' or 'citizen' are not interchangeable for diversity purposes and they have distinct definitions under the law." *Reedy*, 2023 WL 4867995, at *3. The Third Circuit has identified the following non-exhaustive list of facts to consider when determining an individual's domicile or citizenship:

> declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business . . . location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration.

---

[22] Case No. 2:24-cv-1448 ECF No. 16 at 2 (Angela is the "sole member" of HHC).

[23] Case No. 3:24-cv-233 ECF No. 35 at 2 (asserting that "Angela's Interest, LLC" is the "sole member" of Banshee, and Angela is the "sole member" of Angela's Interest, LLC).

[24] The sole member of HCNR is KTRV, which means that the members of KTRV are also the members of HCNR for diversity of citizenship purposes. *Lincoln Benefit*, 800 F.3d at 105 n.16.

[25] Case No. 3:24-cv-233 ECF No. 13 at 3; Case No. 2:24-cv-1448 ECF No. 16 at 2–3. Two of HCNR's and KTRV's members are trusts. To determine the citizenship of a trust, the Court must look to the state of domicile for either the trust's trustee or the trust's beneficiary. *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 41 (3d Cir. 2018). Here, one of the trusts, JGK Holdings, LLC, has a single trustee who is a citizen of Florida and a single beneficiary who is a citizen of Florida, so JGK Holdings, LLC is a citizen of Florida. Case No. 3:24-cv-233 ECF No. 17 ¶ 12.

*Hovensa*, 652 F.3d at 344. In general, "the court must locate the center of one's business, domestic, social and civic life." *Id.* (internal citation and quotation omitted).

"[A] domicile once acquired is presumed to continue until it is shown to have been changed." *Id.* at 345. As a result, this principle "gives rise to a presumption favoring an established domicile over a new one." *Id.* This Court has described the presumption as "*a strong presumption in favor of retaining prior domicile*." *Reedy*, 2023 WL 4867995, at *4–5 (emphasis added). "The effect of this presumption is to put a *heavier burden* on a party who is trying to show a change of domicile than is placed on one who is trying to show the retention of an existing or former one." *Hovensa*, 652 F.3d at 345 (quoting 13B Wright et al., Federal Practice & Procedure § 3612 (emphasis in original)). "The party claiming a new domicile bears the initial burden of producing sufficient evidence to rebut the presumption in favor of the established domicile." *McCann*, 458 F.3d at 288.

It is undisputed that Angela was a Pennsylvania resident and citizen until 2014 when she claims to have become a Florida resident. The salient issue before this Court, therefore, is whether the Motions overcome the strong presumption in favor of retaining Angela's Pennsylvania citizenship — they do not.

## IV.    ARGUMENT

### A.    Angela Is a Pennsylvania Citizen

### 1.    It Is Undisputed That Angela Was a Pennsylvania Resident and Citizen Until 2014

It is undisputed that Angela was a Pennsylvania resident and citizen until 2014 when she claims to have become a Florida resident. Angela was born and raised in Western Pennsylvania.[26] She went to high school in Rockwood, Pennsylvania.[27] She later settled in

---

[26] Ex. 2, Angela Dep. at 5:16-6:11.

[27] *Id.* at 6:20-22.

Rockwood where she met her first husband and had her daughter, Sydney, in 1999.[28] After a divorce, Angela married Jason in approximately 2002, and they lived together at 184 West Mud Pike in Rockwood until their current residence at 192 Stone Ridge Lane in Rockwood was built in 2018.[29] Angela and Jason raised their children in Rockwood, sharing custody of Sydney with her ex-husband and, in 2003, having a son, Spencer.[30] Sydney went to school in Rockwood, including graduating from Rockwood High School, after which she attended Duquesne University.[31] Spencer went to school in Rockwood and then attended PA Cyber for high school.[32]

While living in Rockwood, the Svonavecs formed multiple businesses, including Fearless Leasing, Banshee Farms, Banshee Industries, and HCNR. All of these businesses were owned or managed by Angela.[33] Each of the businesses uses or used a mailing address at 550 Beagle Road in Rockwood.[34] Angela also owns "quite a bit" of property in Pennsylvania, including an office at 338 Industrial Park Road, Meyersdale, Pennsylvania.[35]

From at least 2012 until now, Angela and Jason have filed their federal income tax returns as married filed jointly and listed their address in Rockwood — first at 184 West Mud Pike and then at 192 Stone Ridge Lane.[36] In 2012 and 2013, Angela and Jason similarly filed

---

[28] *Id.* at 7:25-9:12.

[29] *Id.* at 11:8-12:16.

[30] *Id.* at 9:18-10:25.

[31] *Id.* at 51:10-52:6; *id.* at 55:4-7.

[32] *Id.* at 59:4-60:25.

[33] *Id.* at 45:21-22 (Banshee Farms); *id.* at 45:23-25 (Fearless Leasing); Case No. 2:24-cv-1448 ECF No. 1-1 at 25 (Heritage Coal & Natural Resources).

[34] *Id.* at 36:21-25 (Banshee Farms); *id.* at 38:22-25 (Fearless Leasing); Case No. 2:24-cv-1448 ECF No. 1-1 at 25, 58 (Heritage Coal & Natural Resources).

[35] *Id.* at 48:11-16.

[36] Ex., 9 Tax Return Excerpts.

their Pennsylvania income tax return as married filed jointly listing their address at 184 West Mud Pike in Rockwood.[37] Starting in 2014 though, despite continuing to file their federal income tax returns as married filed jointly with a listed address in Rockwood, Angela and Jason began to file their Pennsylvania income tax return as married filing separately with Angela claiming to no longer be a Pennsylvania resident.[38]

### 2. Angela's Purported Florida Citizenship Began As, and Remains, Pretext in Furtherance of a Tax Avoidance Scheme

As described, Angela's alleged Florida citizenship arises from a tax avoidance scheme that the Svonavecs launched in 2014. Facing the prospect that one of their related companies, Fearless One, Inc. ("Fearless One"), would recognize significant income from the sale of an airplane, the Svonavecs implemented a scheme to exploit their house in Florida to claim significant purported business expenses to offset against that income.[39] Specifically, the Svonavecs tried to deduct expenses from their Florida home as business expenses by claiming that the Florida house was Angela's "office." To justify Angela's need for a Florida office, the Svonavecs claimed that Angela was domiciled in Florida. In furtherance of the scheme, Angela compiled and completed a residency "checklist," which included such items as altering her residency status in her tax filings, purchasing a house in Florida, obtaining a Florida driver's license, registering to vote in Florida, and filing a Florida declaration of domicile.[40]

The IRS saw through the Svonavecs' tax avoidance machinations right away, auditing their 2015 and 2016 tax returns and disallowing many "curious personal expenditures characterized as business expenses" related to what the IRS described as the Svonavecs' "second

---

[37] *Id.* at 4, 7.

[38] *Id.* at 8–10.

[39] Ex. 7, IRS Examination Report at 13–16, 70, 129.

[40] Ex. 8, Andersen Firm Residency Checklist.

home in Florida" with the IRS requiring the Svonavecs to pay over $1.6 million.[41] Among other things, the IRS found that the Svonavecs:

- caused Fearless One to pay all the expenses of the Florida house and deduct all such expenses on its books to offset income generated from the 2014 sale of the airplane;[42]

- caused Fearless One to pay Angela a management services fee, which was deducted as business expenses by Fearless One and on which Angela did not pay state income tax by claiming residency in Florida;[43]

- caused Fearless One to pay Angela rent ostensibly for use of the Florida house as Angela's office which Fearless One then deducted as a business expense and on which Angela did not pay state income tax by claiming residency in Florida;[44]

- caused Banshee Crane to pay Angela rent ostensibly for use of the Florida house as Angela's office which Banshee then deducted as a business expense and on which Angela did not pay state income tax by claiming residency in Florida.[45]

As part of its audit, the IRS observed that the Svonavecs' agreements with their related companies (all of which are disregarded entities for tax purposes) underlying the tax avoidance scheme merely were "used to demonstrate that there [were] agreements in place to justify an office in Florida and deduct all of the expenses of the personal residence of the Svonavecs."[46] Significantly, the Svonavecs did not even attempt to conceal their purpose in using their newly-

---

[41] Ex. 5, Gov't Sentencing Memo. at 2.

[42] Ex. 7, IRS Examination Report at 129.

[43] *Id.* at 13–15.

[44] *Id.* at 13–15, 70, 129.

[45] *Id.* at 63.

[46] *Id.* at 15.

purchased Florida house and Angela's claimed Florida domicile as a tax shelter in response to the IRS audit. For example, Angela described the Florida house to the IRS auditor as her "tax and work home."[47] Similarly, the Svonavecs' lawyer argued to the IRS that "whether via the rental agreement or as a home office, deducting the business use of the Florida office space [i.e., the Florida second home] is allowed under the Code."[48] In fact, the only purported business purpose cited to the IRS by the Svonavecs' attorney for Angela having a Florida "office" was "the state tax savings enabled thereby."[49]

Pertinently, in *Galva Foundry Co. v. Heiden*, 924 F.2d 729 (7th Cir. 1991) (Posner, C.J.), the Seventh Circuit found that the defendant was not a *bona fide* Florida citizen when the defendant had claimed domicile in Florida "for tax purposes, mainly to shelter the proceeds" of his sale of stock from Illinois taxes. *Galva Foundry*, 924 F.2d at 730. Despite finding that the defendant had registered to vote in Florida, obtained a Florida driver's license, stated in Florida state filings that he was a permanent resident of Florida, and listed his Florida address as his permanent address on federal and state tax returns — all things Angela did here — the court rejected the defendant's alleged Florida citizenship because "[h]e just wanted to fool the taxing authorities in Florida and particularly Illinois (for it was Illinois taxes that he was trying to escape)." *Id.* at 731. The Seventh Circuit's reasoning should apply with equal force in this case.

Indeed, the U.S. Government has continued to reject the Svonavecs' attempts to characterize their Florida house as Angela's domicile. The U.S. Attorney for the Western District of Pennsylvania recently characterized the Svonavecs' house at 192 Stone Ridge Lane in

---

[47] *Id.* at 70.

[48] *Id.* at 76.

[49] *Id.* at 63.

Rockwood, Pennsylvania as the Svonavecs' "personal residence" in distinction to their "Naples, Florida residence" in the United States Sentencing Memorandum in Jason's criminal case.[50]

### 3. Angela and Jason Have Continued to Identify Rockwood As Their Home and Somerset As Their "Local Community"

Despite using their Florida house to implement their tax avoidance scheme, Angela and Jason have continued to identify Rockwood as their home and Somerset as their local community, and Rockwood is both of their domiciles. *See McCann*, 458 F.3d at 286 ("the domicile of an individual is his true, fixed and permanent home").

Significantly, on June 18, 2019, years after Angela began to claim to be a Florida resident, Angela and Jason filed a complaint in the Somerset County Magisterial District Court, alleging that a "landscaper that provided his services at our Rockwood area farm" had failed to deliver "6 trees" in violation of a contract.[51] Angela verified the complaint subject to the penalties of making unsworn falsification to authorities, stating that "the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief."[52] In the space on the top righthand corner of the document where the "PLAINTIFF" was instructed to list their "NAME and ADDRESS," Angela hand wrote "Jason & Angela Svonavec 192 Stone Ridge Ln. Rockwood, Pa 15557."[53] This Court's precedent holds that an address a plaintiff identifies in court filings is her domicile. *See, e.g.*, *Malone v. Toyota Motor Sales, Inc.*, No. 23-242, 2024 WL 4242109, at *2 (W.D. Pa. Sept. 19, 2024) (relying on fact that plaintiff "notes his return address as 'PO Box 149, Palm Springs, CA 92263' on the first page of his complaint" to find that plaintiff is a citizen of California); *Reedy*, 2023 WL 4867995, at *4 (observing that "[t]he

---

[50] Ex. 5, Gov't Sentencing Memo. at 3, 7.

[51] Ex. 10, June 8, 2019 Somerset County Complaint at 1.

[52] *Id.*

[53] *Id.*

docket" for a party's unrelated criminal case "lists his mailing address as Glenshaw, PA"); *see also Coulter v. Coulter*, No. 22-2228, 2023 WL 1879239, at *2 (3d Cir. Feb. 10, 2023) (holding that party's claim that she was a citizen of New Jersey overcome by the fact of "her consistent use of her Butler, Pennsylvania address and/or her Philadelphia P.O. Box in both prior and current lawsuits").

Angela identifying 192 Stone Ridge Lane as her address in her 2019 Somerset County complaint was not inadvertent. Indeed, she regularly continues to identify 192 Stone Ridge Lane as her residential address. For example, also in 2019, the Svonavecs filed their federal tax return as married filing jointly and took a deduction of $30,794 for "home mortgage interest and points."[54] The IRS instructs taxpayers that they can only take a deduction on their tax returns for home mortgage points "to buy, build or improve your principal residence (*the home you live in most of the time*)."[55] The Svonavecs claimed the deduction on a loan from a Pittsburgh bank for the construction of 192 Stone Ridge Lane, which was completed in 2018.[56] By claiming the deduction for a mortgage on 192 Stone Ridge Lane on their jointly filed federal income tax returns, Angela acknowledged it as her "principal residence."

Likewise, Angela's most recent federal and Pennsylvania tax returns list 192 Stone Ridge Lane as her address (while claiming on her Pennsylvania return to be "not a PA resident").[57] *See Freidrich v. Davis*, 767 F.3d 374, 379 (3d Cir. 2014) (observing that the actions of a person

---

[54] Ex. 9, Tax Return Excerpts at 25–26.

[55] Ex. 11, IRS Topic 504 at 1 (emphasis added).

[56] Ex. 12, 2019 Tristate Capital Bank Loan Interest Statement at 1; Ex. 5, Gov't Sentencing Memo. at 3 (explaining that "Criminal investigators uncovered that for Tax Years 2017 and 2018, defendant Jason Svonavec deceptively categorized the home construction costs under the guise of false book entries").

[57] Ex. 9, Tax Return Excerpts at 38, 40.

showed their intent to remain in Germany because "[f]rom 2000 to 2011, Davis filed tax returns in both the United States and Germany *listing his address in Germany*." (emphasis added)).

More recently, on July 1, 2024, the Svonavecs filed a "UCC1 Financing Statement" with the Commonwealth of Pennsylvania in which Jason's and Angela's "Mailing Address" are identified individually.[58] Angela lists hers as 192 Stone Ridge Lane.[59] In March 2024, Angela also listed "Rockwood, PA 15557" for a political contribution disclosed to the Federal Election Commission.[60]

Consistent with these filings, Angela has indicated that she considers Somerset County to be her home in multiple publications featuring her and her businesses. On June 8, 2021, The Greater Cumberland Committee published a profile on Angela and two of her businesses, Banshee Farms and HCNR, noting that "[i]t is a high priority for Angela that each of her companies be a valuable and positive contribution to *her local community*."[61] At her deposition, Angela testified that "local community," would have been referring to "West Virginia, Maryland and Pennsylvania" — *not* Florida.[62] A second article from The Greater Cumberland Committee likewise states that "Angela is a native of Somerset County, PA, and has a deep respect for the work ethic and integrity of the local residents. With a drive and desire to serve, it is a high priority for Angela that each of her companies be a valuable and positive contribution to her local community."[63] *See GridKor, LLC v. Gorbach*, No. 23-3563, 2024 WL 3431998, at *4

---

[58] Ex. 13, UCC Financing Statement at 1.

[59] *Id.*

[60] Ex. 14, Political Contribution at 1.

[61] Ex. 15, June 8, 2021 Greater Cumberland Community Article at 2 (emphasis added).

[62] Ex. 2, Angela Dep. at 69:17-24.

[63] Ex. 1, February 10, 2021 Greater Cumberland Community Angela Svonavec Article at 1.

(E.D. Pa. July 15, 2024) (finding that a party was a citizen of New York in part because "[n]ews accounts . . . identified him as 'Oleksandr Maydanskyy, 30, of West Babylon, New York'").

A February 5, 2024 article in the Tribune Democrat profiled Angela among other female business owners. Angela was quoted in the article, speaking proudly about her family's history in the coal industry and that she had the "largest and oldest surface mining permit in the state of Pennsylvania."[64] In focusing on Angela's Pennsylvania-based businesses, the article described Angela as "resid[ing] half the year in Rockwood and the other half in Naples, Florida."[65] While Angela is certainly entitled to highlight her Somerset community ties when promoting her Pennsylvania-based businesses, she should not be allowed to simultaneously disavow her Somerset residency and claim Florida residency when she believes it serves her strategic interests.

In any event, such repeated references to 192 Stone Ridge Lane as Angela's residential address — in sworn filings as well as casual or off-the-cuff references alike — persuasively demonstrate that 192 Stone Ridge Lane is her home, "the place to which, whenever [s]he is absent, [s]he has the intention of returning." *McCann*, 458 F.3d at 290.

The Svonavecs' Somerset community ties were likewise highlighted in connection with Jason's sentencing for criminal tax fraud. Jason informed Judge Bissoon that he "is a resident of Somerset, Somerset County and believes that all the witnesses in this case . . . reside in the Johnstown area."[66] One of those witnesses was Angela, who submitted a statement to the court in which she told Judge Bissoon that "I am writing to you as a character witness for my husband Jason Svonavec."[67] While asking Judge Bissoon for leniency in Jason's sentencing, Angela

---

[64] Ex. 16, Tribune Democrat Article at 9.

[65] *Id.* at 8.

[66] Ex. 17, Mtn. for Transfer Venue Within the District at 2.

[67] Ex. 4, Jason's Sentencing Memo. at 117.

described how Jason had helped the people of Somerset County and ended by stating: "Our businesses need him. And I believe *our local community* needs Jason."[68] *GridKor, LLC*, 2024 WL 3431998, at *4 (finding that a party was a citizen of New York because the party told others "that he lived in New York or on Long Island, and he made references to his home being there"). Angela's statement that Somerset County is her "local community" was on May 1, 2024, only months before Banshee filed its complaint against HCNR on October 1, 2024.[69]

Numerous other character witnesses similarly described Jason's and Angela's community ties to Somerset County, including:

- Jason has "shared his success as a coal operator with the community through generous donations and the community volunteer work of Mr. Svonavec and his lovely wife, Angela."[70]

- "I've known Jason and Angie for 20 years as a parent, community member, business owner . . . . I have known Jason as a parent in our district, his son and his step-daughter, and I can tell you that you couldn't ask for more respectful young people that are contributing members of society. They were contributing members as students in our school district and went on to continue to lead successful lives."[71]

- "Jason and Angie stepped up and contributed the funds in order to renovate our elementary library . . . ."[72]

---

[68] *Id.* (emphasis added).

[69] *Id.*

[70] Ex. 4, Jason's Sentencing Memo. at 40.

[71] Ex. 6, Transcript of Jason's Sentencing Hearing at 46:10-47:10.

[72] *Id.* at 49:24-25.

- Jason's "family has attended [the Rockwood Alliance] Church for many years and have been active members of the community."[73]

At the conclusion of Jason's sentencing hearing, Jason's attorney made "a recommendation that [Jason] be sentenced close to home."[74] After the assistant U.S. attorney indicated there was no objection, Judge Bissoon asked Jason's attorney, "[s]o the recommendation — as it currently stands, the recommendation for a facility as close to Somerset as possible?" to which the attorney responded "Yes, Your Honor."[75] In a filing, Jason requested to be housed at Federal Prison Camp Morgantown, located in Morgantown, West Virginia.[76] Jason was asked in his deposition, "Did you ever consider a place in Florida," to which he responded, "No"[77] — a telling indication of where he considered Angela's and his family's home to be.

### 5.    Other Material Facts Demonstrate that Angela Is a Pennsylvania Citizen

As noted, the Third Circuit has identified certain material facts to consider when determining an individual's citizenship. *See Hovensa*, 652 F.3d at 344. Those material facts decisively favor a finding that Angela is a Pennsylvania citizen:

*First*, as discussed, Angela owns or manages numerous businesses and pieces of property located in Pennsylvania. *Hovesna*, 652 F.3d at 344 (finding that "place of business" can determine a person's domicile); *Krivulka v. Lerner*, No. 20-cv-09724, 2021 WL 3260851, at *5 (D.N.J. July 30, 2021) (finding decedent was a citizen of New Jersey because he "owned and controlled numerous companies that maintained principal business addresses in New Jersey up until his death" and "controlled multiple residential properties located in New Jersey as of the

---

[73] Ex. 4, Jason's Sentencing Memo. at 115.

[74] Ex. 6, Transcript of Jason's Sentencing Hearing a 78:5-8.

[75] *Id.* at 79:9-12.

[76] Ex. 18, Bureau of Prisons Request at 1.

[77] Ex. 19, Jason Dep. at 13:19-25.

date of his death"); *Reedy*, 2023 WL 4867995, at *4 (finding that party was a citizen of Pennsylvania in part because "he owned and operated" a business with an "address of 2031 Middle Road, Glenshaw, Allegheny County, Pennsylvania" and "owned real estate, a marital residence, located in Glenshaw, Allegheny County, Pennsylvania").

*Second*, all of Angela's family, including her parents, two children, and husband are Pennsylvania citizens.[78] *Hovesna*, 652 F.3d at 344 (finding that "location of spouse and family" can determine a person's domicile); *GridKor, LLC*, 2024 WL 3431998, at *4 ("As of September 14, 2023, Mr. Gorbach's ex-wife and daughter lived in Connecticut."); *Choupak v. Rivkin*, No. 11-1281, 2012 WL 2365903, at *8 (D. Del. June 21, 2012) ("Rivkin's wife, step-daughter, and young son, along with Rivkin's father, all live together in a single home in San Mateo, California—and have for nearly 18 months, from January 2011 to the present."); *Krivulka*, 2021 WL 3260851, at *5 ("Joseph's three surviving adult children resided in New Jersey as of the date of his death."); *Harris v. Kellogg, Brown & Root Servs., Inc.*, 151 F. Supp. 3d 600, 605 (W.D. Pa. 2015) ("[N]early all of his family and friends lived in" Pennsylvania).

*Third*, Angela's wealth management bank account is with First National Bank located in Johnstown, Pennsylvania.[79] *Hovensa*, 652 F.3d at 344 (finding that "location of brokerage and bank accounts" can determine a person's domicile); *GridKor, LLC*, 2024 WL 3431998, at *4 (finding that a party is a citizen of New York in part because he "maintains personal bank accounts at a Chase branch I New York").

*Fourth*, Angela attends church in Somerset County. As noted, the church treasurer of Rockwood Alliance Church was a character witness in connection with Jason's sentencing hearing and wrote to Judge Bissoon that "[h]is family has attended this church for many years

---

[78] Ex. 3, RFAs Nos. 2–3, 5–7 at pp. 11–13.

[79] Ex. 2, Angela Dep. at 49:16-50:12.

and have been active members of the community."[80] When asked if the church treasurer's statement was accurate, Angela testified "Yes, and my mom has been there for many years. And we have supported it. We've sent donations to that church for many years."[81] *GridKor, LLC*, 2024 WL 3431998, at *4 (finding that a party lived in Connecticut because he "attends church in Stamford, Connecticut").

*Fifth*, other facts include that Angela's phone number contains a Somerset County-area area code, *Harris*, 151 F. Supp. 3d at 605 (finding that party was a citizen of Pennsylvania in part because he "maintained his 412-area code cell phone number"); she continued to serve on the board of the Greater Cumberland Committee while purportedly residing in Florida, a "multistate effort" among "the state of Pennsylvania, Maryland and West Virginia" to complete Route 219; and she continued to sit on the Board of the Pennsylvania Coal Alliance while purportedly residing in Florida. *See Hovensa*, 652 F.3d at 344 (finding that "membership in unions and other organizations" can determine a person's domicile).[82]

### 6. The Motions Fail to Overcome the Presumption in Favor of Angela's Pennsylvania Citizenship

The Motions fail to overcome the "strong presumption," *Reedy*, 2023 WL 4867995, at *5, in favor of retaining Angela's Pennsylvania citizenship. The only evidence submitted in support of the Motions is a declaration from Angela in which she asserts that (1) she spends a majority of her time in Florida; (2) she has a Florida driver's license; and (3) she is registered to vote in Florida. Case No. 3:24-cv-233 ECF No. 13-1. The Third Circuit has cautioned that "one's testimony as to his intention to establish a domicile, while entitled to full and fair consideration, is subject to the infirmity of any self-serving declaration, and it cannot prevail to establish

---

[80] Ex. 4, Jason's Sentencing Memo. at 115.

[81] Ex. 2, Angela Dep. at 86:6-15.

[82] *Id.* at 58:4-15; *id.* at 7:20-21; *id.* at 63:17-64:5; Ex. 16, Tribune Democrat Article at 9.

domicile when it is contradicted or negatived by an inconsistent course of conduct." *Frett-Smith v. Vanterpool*, 511 F.3d 396, 401 (3d Cir. 2008) (quoting *Korn v. Korn*, 398 F.2d 689, 691 (3d Cir. 1968)); *see also Malone*, 2024 WL 4242109, at *2 (same). The foregoing evidence of Angela's long and constant ties to Western Pennsylvania is precisely such an inconsistent course of conduct that contradicts — and prevails over — Angela's self-serving declaration. Moreover, Angela's three assertions, even if true, fail to overcome the strong presumption in favor of retaining Angela's Pennsylvania citizenship.

While not determinative regardless, the documents — Florida driver's license and Florida voter registration — Angela obtained to further the Svonavecs' tax avoidance scheme and on which she now relies to claim Florida citizenship are easily obtained, irrespective of a person's actual residency and citizenship. *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir. 1972) ("[A]lthough the place where one votes has an important consideration, many trial courts have found domicile, and therefore an intention to remain indefinitely, in a place other than where the party voted."); *Harris*, 151 F. Supp. 3d at 605 (finding that decedent was not a citizen of Tennessee despite the fact that he had "obtained a Tennessee driver's license"); *Hickox v. Centre Daily Times*, No. 4:10-cv-1931, 2011 WL 2446313, at *2 (M.D. Pa. Mar. 30, 2011) (finding that obtaining Washington driver's license, registering to vote in Washington, and starting a business in Washington failed to rebut presumption that party remained a Pennsylvania citizen). Consider that Angela's son, Spencer, has a Florida driver's license and is registered to vote in Florida, but Banshee has admitted that he is a Pennsylvania citizen.[83] Further consider that Angela's

---

[83] Ex. 20, October 23, 2024 Status Conference Transcript at 7–8 (Banshee's counsel representing to the Court that "[i]n discussions prior to today's hearing, I know that [Angela's] son, who just turned 21, has had a Florida driver's license since, I believe, he was 16."); Ex 21, Spencer Svonavec's Florida Voter Registration at 1 (Spencer Svonavec's voter status in Florida listed as "Active"); Ex. 3, RFAs at No. 6–7, pp. 12–13.

daughter, Sydney, obtained a Florida driver's license while in high school, even though she attended Rockwood High School in Somerset and admittedly is a Pennsylvania citizen as well.[84]

Accordingly, the Motions fail to overcome the presumption that Angela remains a Pennsylvania citizen.

## B.    Jason, Not Angela, Is the Sole Member of Banshee

It is undisputed that the most recent publicly-available document filed with the Commonwealth of Pennsylvania indicates that Jason is the sole member of Banshee.[85] The documents produced in limited jurisdictional discovery, however, reflect that Jason purported to transfer his interest in Banshee to his wholly-owned company, "Jason's Interest, LLC," which then transferred its interest in Banshee to Angela on June 1, 2024.[86] For reasons she could not explain, Angela transferred her interest in Banshee to her wholly-owned company, Angela's Interest, LLC, also on June 1, 2024.

Fatally, the purported transfer of Jason's interest in Banshee (through Jason's Interest, LLC) to Angela on June 1, 2024 lacked consideration, meaning it was a void act. As such, Jason (through Jason's Interest, LLC) continues to own 100% of the interest in Banshee.

It is black letter law that a contract "without consideration[] is void." *Miller v. Hemler*, 5 Watts & Serg. 486, 488 (Pa. 1843); *McHugh v. Schuykill Co.*, 67 Pa. 391, 396 (Pa. 1871) (holding that "confirmation" of a void contract "without a new consideration would be *nudum pactum*"); *Esakovich v. Groudine*, 14 A.2d 850, 854 (Pa. Super. Ct. 1940). A void contract means that is has "no effect whatsoever" and cannot "be cured by the act of confirmation of one of the parties." *Yannuzzi v. Pennsylvania*, 390 A.2d 331, 332 (Pa. Commw. Ct. 1978); *Bertram v.*

---

[84] Ex. 2, Angela Dep. at 54:14-55:14.

[85] Ex. 22, August 14, 2023 Certificate of Amendment for Banshee.

[86] Ex. 23, Assignment Agreement.

*Beneficial Consumer Disc. Co.*, 286 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[A] void contract lacks legal existence from inception.").

It likewise is black letter law that consideration requires a "bargained for exchange" of something between the parties. *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 237 (Pa. Commw. Ct. 2017). "[C]onsideration which is merely nominal cannot support a contract." *Hoffman v. Bankers Tr. Co.*, 925 F. Supp. 315, 319 n.1 (M.D. Pa. 1995).

Jason, through Jason's Interest, LLC, purported to enter into the "Membership Interest Assignment Agreement" with Angela effective as of June 1, 2024.[87] The purported agreement provided that "for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties hereby agree" that Jason "assigns, transfers, and conveys the Membership Interest of [Banshee]" to Angela.[88] The document does not identify the "consideration" Angela gave in exchange for Jason's Interest LLC assigning its interest in Banshee to her, and none can be gleaned from the document itself. Neither Angela nor Jason could identify any such consideration in their depositions either. When asked "what consideration did you give in exchange" for Jason's Interest LLC assigning Banshee to her, Angela testified, "I don't know."[89] Jason was more honest. When asked "what did Angela Svonavec give to Jason's Interest, LLC," Jason testified, "nothing."[90]

The Svonavecs' failure to comply with legal requirements in the purported assignment of Banshee's membership interest from Jason to Angela is consistent with their general failure to maintain corporate formalities with respect to Angela's Interest, LLC and Jason's Interest, LLC. Both Angela and Jason failed to maintain corporate books and records including corporate by-

---

[87] *Id.* at 1.

[88] *Id.*

[89] Ex. 2, Angela Dep. at 167:18-19.

[90] Ex. 19, Jason Dep. at 37:20-38:3.

laws, resolutions, or meeting minutes; failed to hold annual meetings; failing to file annual reports in accordance with state law; and generally could not articulate why or when those entities were formed.[91] Indeed, as of the time of removal, Angela's Interest, LLC was administratively dissolved and therefore was not capable of entering into contracts or otherwise transacting business.[92] *See* Fla. Stat. § 605.0212(6) (Florida LLC's failure to file an annual report makes it "subject to dissolution or cancellation of its certificate of authority to transact business").

In the absence of any consideration provided by Angela, the alleged contract by which Jason's Interest LLC purported to assign its interest in Banshee to Angela is void as a matter of law and therefore "lack[ed] legal existence from inception." *Bertram*, 286 F. Supp. 2d at 458.[93] Accordingly, at the time Banshee sued HCNR on October 1, 2024, and at the time when HCNR removed the case to federal court on October 7, 2024, Jason (through Jason's Interest LLC) remained the sole member of Banshee for diversity of citizenship purposes. Given that all parties agree that Jason is a citizen of Pennsylvania, complete diversity of citizenship exists between Banshee and HCNR.[94]

---

[91] Ex. 2, Angela Dep. at 147:3-151:5; Ex. 19, Jason Dep. at 55:7-57:1.

[92] Ex. 3, RFAs No. 1 at p. 11.

[93] Jason did not gift Banshee to Angela, either. In addition to the fact that Jason and Angela framed the transfer as a contract rather than as a gift, Jason did not manifest "an intention to make" a gift, and Angela did not manifest an "acceptance" of the gift. *Gift*, BLACK'S LAW DICTIONARY (12th ed. 2024). When Jason was asked if the transfer was "a gift to Angela," Jason's counsel instructed him not to answer on the grounds of "spousal privilege." Ex. 19, Jason Dep. at 30:25-31:9. When Angela was asked, "was this like a gift to you," she testified, "I didn't have a perspective on it. I don't know." Ex. 2, Angela Dep. at 169:14-17.

[94] The reason for the void assignment agreement appears to be tax related. While Angela and Jason have filed their federal tax returns as married filing joint since 2012, since 2014 they filed Pennsylvania returns as married filing separately. *See, e.g.*, Ex. 9, Tax Return Excerpts at 34–36 (marking "X" for "Married filing jointly" on 2022 federal return and "M" for "Married/Filing Separately" on 2022 Pennsylvania returns). Neither would admit in their depositions why they took this paradoxical tax position, but it appears that they were and are attempting to attribute

## V.    CONCLUSION

For the foregoing reasons, the Court should deny both Motions. Although Defendants believe there are no disputes of material fact that would prevent the Court from denying both Motions based on the parties' written submissions, if the Court determines that "there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." *McCann*, 458 F.3d at 290.

November 21, 2024

Respectfully submitted,

/s/ Nathan Townsend

Curtis B. Krasik (Pa. ID #81150)
Curtis.Krasik@klgates.com
Thomas C. Ryan (Pa. ID # 92482)
Thomas.Ryan@klgates.com
Nathan Townsend (Pa. ID #327215)
Nathan.Townsend@klgates.com

K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Tel:  412-355-6500
Fax:  412-355-6501

*Attorneys for KTRV, LLC and Heritage Coal & Natural Resources, LLC*

---

income to Angela, who ultimately would not need to pay state income taxes as a purported "resident" of Florida, while Jason would be required to pay state income taxes as a resident of Pennsylvania. The defense counsel who represented them before the IRS spelled out the concept in its correspondence with the IRS: "[Angela's] husband, Jason Svonavec, files [Pennsylvania income tax returns] without Mrs. Svonavec because, as a resident of Florida, she is not subject to Pennsylvania personal income tax. . . . Florida does not have an income tax requirement which would require Mrs. Svonavec to file there." Ex. 7, IRS Examination Report at 71.