# <u>Exhibit 4</u>

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

UNITED STATES OF AMERICA,   )
          Plaintiff,   )
                  )
       v.              )    Case No. 2:23-CR-00264
                  )
JASON R. SVONAVEC,      )
          Defendant.   )

## DEFENDANT'S SENTENCING MEMORANDUM

DATED:  August 7, 2024

*Robert J. Ridge*
Robert J. Ridge, Esq. (PA I.D. # 58651)
(412) 394-2440
*rridge@clarkhill.com*
Neel Kapur, Esq. (PA I.D. # 329518)
(412) 394-7780
*nkapur@clarkhill.com*
Clark Hill PLC
One Oxford Centre
301 Grant Street, 14th Floor
Pittsburgh, PA 15219
(412) 394-2555 FAX

*Matthew R. Zatko*
Matthew R. Zatko (PA I.D. # 79988)
(814) 443-1631
*mrzesq@hotmail.com*
Zatko Law, LLC
202 East Union Street
Somerset, PA 15501
(814) 445-7570 Fax

*Efrem M. Grail*
Efrem M. Grail, Esq. (PA I.D. #81570)
(412) 332-9101
Egrail@graillaw.com
The Grail Law Firm
428 Boulevard of the Allies, Suite 500
Pittsburgh, PA 15219

*Attorneys for Defendant Jason R. Svonavec*

HCNR0000104

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................................1

I.     THE OFFENSE CONDUCT ..............................................................................................1

II.    APPLICATION OF THE §3553(a) FACTORS IN MR. SVONAVEC'S
     CASE ..................................................................................................................................1

     A.    The Nature and Circumstances of The Offense and The History
         and Characteristics of The Defendant (18 U.S.C. §3553(a)(1)) ............................2

         i.       Perseverance and Generosity – Motivated by Success and
                Not Money ....................................................................................2

         ii.      An Employer Who Treats His Workers with Fairness and
                Compassion ...................................................................................3

         iii.     A Benefactor to the Community ....................................................4

     B.    The Need for The Sentence Imposed to Reflect the Seriousness of
         The Offense, To Promote Respect for The Law, And to Provide
         Just Punishment For The Offense (18 U.S.C. §3553(A)(2)(A)) .............................5

         i.       The Punitive Impact of the Fraud Penalty ...................................5

         ii.      General Deterrence .......................................................................6

         iii.     Specific Deterrence ......................................................................7

     C.    The need to provide the defendant with education or vocational
         training, medical care, or other correctional treatment in the most
         effective manner (18 U.S.C. §3553(a)(2)(B))........................................................8

     D.    The Guidelines and policy statements issued by the Sentencing
         Commission (18 U.S.C. §3553(a)(5)) and the Kinds of Sentences
         Available ................................................................................................................8

     E.    The need to avoid unwarranted sentencing disparities among
         defendants with similar records who have been found guilty of
         similar conduct (18 U.S.C. § 3553(a)(6)) .............................................................9

     F.    The need to provide restitution to any victims of the offense (18
         U.S.C. § 3553(a)(7)) ............................................................................................11

III.   A MODEST VARIANCE TO ALLOW A SENTENCE OF PROBATION
     IS APPROPRIATE HERE................................................................................................11

     A.    Extensive Charitable Contributions to the Somerset Community ........................12

HCNR0000105

|  | B. | Mr. Svonavec's Early Acceptance of Responsibility Furthered Important Law Enforcement and Judicial Goals and Ought to be Tangibly Recognized. | 13 |
|  | C. | Concrete Actions Demonstrating Genuine Acceptance of Responsibility | 13 |
|  | D. | Combination of Factors | 14 |
| IV. | | A SENTENCE OF PROBATION WITH MODIFIED CONDITIONS IS APPROPRIATE HERE | 15 |
|  | A. | A Meaningful Community Service Obligation | 15 |
|  | B. | The Conditions of Probation Should Permit Mr. Svonavec The Opportunity to Possess Firearms and Ammunition for Hunting | 15 |
| V. | | CONCLUSION | 16 |

HCNR0000106

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gall v. United States*,
    552 U.S. 38 (2007).............................................................................................................11, 15

*Garland v. Range*,
    23-374, 2024 WL 3259661 (U.S. July 2, 2024)......................................................................16

*Helvering v. Mitchell*,
    303 U.S. 391 (1938)...................................................................................................................5

*Koon v. United States*,
    518 U.S. 81 (1996).....................................................................................................................1

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
    597 U.S. 1 (2022).....................................................................................................................16

*Range v. Attorney Gen. United States of Am.*,
    69 F. 4th 96 (3d Cir.2023) (*en banc*), *cert.* granted, judgement vacated sub
    nom. ........................................................................................................................................16

*Rita v. United States*,
    551 U.S. 338 (2007).................................................................................................................12

*Rock Island, Arkansas & Louisiana R.R. Co. v. United States*,
    254 U.S. 141 (1920)...................................................................................................................7

*United States v. Adelson*,
    441 F. Supp. 2d 506 (S.D.N.Y. 2006)........................................................................................2

*United States v. Arrelucea-Zamudio*,
    581 F.3d 142 (3d Cir. 2009).....................................................................................................15

*United States v. Booker*,
    543 U.S. 220 (2005).................................................................................................................15

*United States v. Clark*,
    No. 2:18-CR-126 (Schwab, J.) .................................................................................................11

*United States v. Cooper*,
    437 F.3d (3d Cir. 2006)..............................................................................................................1

*United States v. Fred E. Cooper*,
    394 F. 3d 172 (3d Cir. 2005)....................................................................................................10

ClarkHill\K9143\435962\278359628.v1-8/7/24

HCNR0000107

*United States. v. Gardellini,*
    545 F. 3d 1089, 1090-91 (D.D.C. 2008) ............................................................................... 10

*United States v. H. Ty Warner,*
    792 F.3d 847 (7th Cir. 2015) ........................................................................................... 11, 13

*United States v. Howe,*
    543 F.3d 128 (3d Cir. 2008) ................................................................................................ 12

*United States v. Kramer,*
    No. 2:17-CR-59 (Schwab, J.) ............................................................................................... 10

*United States v. Merced,*
    603 F.3d 203 (3d Cir. 2010) ............................................................................................ 1, 12

*United States v. Rahimi,*
    144 S.Ct. 1889 (2024) .......................................................................................................... 16

*United States v. Robinson,*
    2014 WL 1400197 (D.N.J. Apr. 9, 2014) ........................................................................... 13

*United States v. Serafim,*
    233 F.3d 758 (3d Cir. 2000) ................................................................................................ 12

*United States v. Sullivan,*
    414 Fed. Appx. 477 (3d Cir. 2011) ..................................................................................... 12

*United States v. Tomko,*
    562 F. 3d 558 (3d Cir. 2009) .......................................................................................... 10, 12

**Statutes**

18 U.S.C,. §3553(a)(2) ............................................................................................................. 5

18 U.S.C. §3553(a) ........................................................................................................ *passim*

18 U.S.C. §3553(a)(1) .............................................................................................................. 2

18 U.S.C. §3553(A)(2)(A) ....................................................................................................... 5

18 U.S.C. §3553(a)(2)(B) ..................................................................................................... 6, 8

18 U.S.C. §3553(a)(5) .............................................................................................................. 8

18 U.S.C. § 3553(a)(6) ............................................................................................................. 9

18 U.S.C. § 3553(a)(7) ........................................................................................................... 11

18 U.S.C. §3559(a)(1) .............................................................................................................. 9

ClarkHill\K9143\435962\278359628.v1-8/7/24

HCNR0000108

18 U.S.C. §3559(a)(2)................................................................................................9

18 U.S.C. §3561(a) ....................................................................................................9

18 U.S.C. §3563(a)(1)..............................................................................................16

18 U.S.C. §3563(b)(8) .............................................................................................16

26 U.S.C. §6201(a)(4)..............................................................................................11

28 U.S.C. §994(j)........................................................................................................9

**Other Authorities**

GAO Study 18-203 (February 2, 2018), available at
    https://www.gao.gov/products/gao 18-203 ..........................................................14

Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing:
Why Less is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev
    1159, 1205 (2014)...............................................................................................6

R. Frase, *Punishment Purposes*, 58 Stanford L. Rev. 67, 80 (2010) ...............................6

Returns and Other Forms Filed, By Type of Return, Fiscal Years 2022 and 2023,
    available at http://www.irs.gov/pub/p55b.pdf (site visited July 26, 2024)................7

S. Rep No. 98-225 (1983)........................................................................................15

U.S. Government Accountability Office, "Federal Criminal Restitution: Most
    Debt is Outstanding and Oversight of Collection Could Be Improved" .................14

U.S.S.G. §1B1.1(a)-(c) .............................................................................................11

U.S.S.G. §4C1.1.............................................................................................8, 9, 10

U.S.S.G. §5B1.3(a)(1)...............................................................................................16

U.S.S.G. §5C1.1..........................................................................................................9

U.S.S.G. §5C1.1(c) .....................................................................................................8

U.S.S.G. §5C1.1(c)(1).................................................................................................8

U.S.S.G. §5C1.1(c)(2).................................................................................................8

U.S.S.G. §5C1.1(c)(3).................................................................................................8

U.S.S.G. §5C1.1, comment. (n. 10) ...............................................................1, 8, 10

HCNR0000109

U.S.S.G §5H1.11 ........................................................................................................................12

U.S. Sentencing Commission, "Recidivism of Federal Offenders Released in
    2010" (September 2021), available at
    https://www.ussc.gov/sites/default/files/pdf/research-and-
    publications/research-publications/2022/20220210_Recidivism-Violence.pdf ........................7

*Wall Street Journal*, "Billions Going Unrecovered", September 18, 2014 ...................................14

ClarkHill\K9143\435962\278359628.v1-8/7/24

HCNR0000110

**ARGUMENT**

All parties agree that the correct offense level in Mr. Svonavec's case is 11, in Zone B. ECF No. 27, *Presentence Investigation Report* ("PSIR") at ¶¶37,71 and ECF No. 11, *Plea Agreement* at pg. 6(C)(3). For that level, the Sentencing Commission instructs the Court in an Application Note that "[a] sentence other than a sentence of imprisonment [i]s generally appropriate." U.S.S.G. §5C1.1, comment. (n. 10). And that is even before considering the §3553(a) factors. Indeed, the "unique study" that is Jason Svonavec[1] requires a well-warranted variance and a sentence of probation.

**I.     THE OFFENSE CONDUCT**

By claiming personal expenses as business deductions, Mr. Svonavec shirked a rightful duty and injure the integrity of the tax reporting system. Nothing excuses that misconduct. He says so himself: "I am guilty of the offense of failing to report all my income for 2017 and 2018. No one is responsible for my misconduct but me. The fault is mine, period."

**II.     APPLICATION OF THE §3553(A) FACTORS IN MR. SVONAVEC'S CASE**

After calculating the Guidelines range, "the court must 'exercise its discretion' through 'meaningful consideration of the §3553(a) factors' before deciding on a sentence. *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010) (quoting *United States v. Cooper*, 437 F.3d, 329 (3d Cir. 2006). Put differently, the Court must consider each of the factors in 18 U.S.C. §3553(a) to determine whether a departure or a variance is appropriate. *Id.*

---

[1]*Koon v. United States*, 518 U.S. 81, 113 (1996).

1

HCNR0000111

## A.    The nature and circumstances of the offense and the history and char-
acteristics of the defendant (18 U.S.C. §3553(a)(1))

The fundamental principle of weighing the good with the bad was plainly what

Congress had in mind when it commanded courts to consider, as a necessary sentencing

factor, "the history and characteristics of the defendant." 18 U.S.C. §3553(a)(1). Perhaps

Judge Rakoff captured it best in *United States v. Adelson*, 441 F. Supp. 2d 506, 514

(S.D.N.Y. 2006): "Surely, if ever a man is to receive credit for the good he has done, and

his misconduct assessed in relation to his life overall, it should be at this moment of

sentencing, when his future hangs in the balance." In weighing the good here, there is much

to admire. For the Court's consideration we have provided over 30 letters and relevant

exhibits. We will also present live testimony at the hearing. As the Court shall see, Jason

Svonavec's life overall is one of goodness and decency.

Theses letters collectively offer the Court a reliable resource to understand Mr.

Svonavec's history and measure his character:

### i.    Perseverance and Generosity – Motivated by Success and Not Money

- Daniel Aust (Exhibit #1): "He is one of the most hardworking men I've ever met who truly personifies the essence of the 'American Spirit.'"

- Debra Svonavec (Exhibit #2): "In the summer months, he was up very early to go with his grandfather or dad and would come home as it was getting dark, dirty but with a big smile on his face because he had fun, while learning good work ethics and responsibilities. At the time, he did not realize this, but it was shaping him into the responsible, successful businessman that he is today." "The Svonavec name is very well respected in Somerset County, and known for their honesty, kindness to other and work ethics. Jason's upbringing reflects these values."

- Richard Svonavec (Exhibit #3): "Jason has always been a hard worker from childhood to present times. When he graduated high school, Jason brought his own pick-up truck and small trailer to haul parts and small pieces of equipment to the Midwest..."

HCNR0000112

- Kirk Schrock (Exhibit #4): "known Jason and the Svonavec family for most of [his] life, over 40 years. I have always known the Svonavecs to be some of the hardest working people I have ever met."

- John Morocco (Exhibit #5) summed it up best by stating that "Jason is driven more by success than the monetary value of a business."

- James Christie (Exhibit #6) stated his "experience with Mr. Svonavec is that he is a hard worker, usually on the job at 4:00 a.m. and getting home between 7:00 p.m. and 9:00 p.m."

### ii.   An Employer Who Treats His Workers with Fairness and Compassion

- Troy Slayton (Exhibit #7) stated he "couldn't have asked for a better guy to work for. He always treated everybody great and shared in his growth. I would go back to work for [him] anytime he called."

- Daniel Aust (Exhibit #1): "I can honestly say that the time I worked for Jason over the course of 5 years was my most enjoyable time working anywhere. The way Jason conducted himself and treated his employees was unmatched. In the time I worked for Jason, I was treated many times better than any brother could treat me. Jason always went out of his way to make sure each employee was at their best, even on the bad days, he never faltered."

  Kirk Schrock (Exhibit #4): "[One time,] Jason personally called my office to refer one of his employees for care regarding an injury he received. I provided care for a number of months until his care was covered. All the while Jason would frequently contact me to ask on his progress, update me with any concerns as to his ability to work, and furthermore, paid all of his expenses. I have never had an employer so involved with an employee's care and welfare in my 40 years of practice."

- Eliazer Manuel (Exhibit #8): "As an employer, he treated everyone fairly. He did his best to make sure that the work environment was safe to work in and that you had the necessary items to complete your work. He expected a good day's work but he paid you fairly and on time."

- John Morocco (Exhibit #5) stated that "Jason always took pride in having a business that pays his employees a fair wage and he always treats people the way he would want to be treated."

3

HCNR0000113

### iii. A Benefactor to the Community

- Richard Svonavec (Exhibit #3): "It makes me proud to see Jason giving back to the Community. He [Jason] donated funds to the Rockwood School Library, to private individuals, many donations and most recently to building a new tractor pulling track and facility to the local New Centerville Volunteer Fire Department."

- Jeff Lape (Exhibit #9): "[Jason] has over the years generously given monetary donations to the school that my children attended to help their education and the children in the school district.

  "Last year, our local Jubilee that has been tradition in our community was in discussion of closing and he took a stand, without question, to not only offer his equipment but he also built a new track and devoted endless, volunteer hours to make sure that our jubilee would be able to run…as it has for roughly 75 years."

- Scott Boyce (Exhibit #10): "Jason has paid to replace a bridge that was damaged. The state did not have the funding to cover a new bridge, so they condemned it. This replacement was completely covered by Mr. Svonavec out of the goodness of his heart. He knew many people traveled this road, especially the Amish and local farmers and they would have to travel several miles to get to the grocery store or into town. He did not ask for any reimbursement or for public acknowledgement for this project."

  "Jason has paid his employees to pressure wash the Meyersdale high school bleachers prior to football games, graduation, and other sporting events."

  "[Jason] has donated money to the [Meyersdale] school to help provide air filters for not just the high school but all three facilities. He has also provided funding for other school events and projects."

  "[Jason] has provided loaders and manpower to help the boroughs remove large piles of snow when the weather has caused travel delays and snow buildup on sidewalks and public parking areas. He had provided this free of charge and with his fuel and equipment."

- John Morocco (Exhibit #5): "Jason was always well-respected by not only his employees but many people in the surrounding communities. I have seen firsthand the generosity Jason has given to many people. We have fundraising benefits at the Speedway for The Childrens' Aid Home and Children's Hospital of Pittsburgh every year and Jason goes above and beyond to give at these events."

4

HCNR0000114

These are but excerpts of the character assessment letters offered in support of Mr. Svonavec. The complete collection of letters sets those excerpts in context, allowing the Court a reliable basis for assessing Jason Svonavec's history and characteristics.

## B. The Need for The Sentence Imposed to Reflect the Seriousness of The Offense, To Promote Respect for The Law, And to Provide Just Punishment For The Offense (18 U.S.C. §3553(A)(2)(A))

Mr. Svonavec understands his conduct calls for a corrective response. Without doubt he recognizes the embarrassment and loss of status he brought on himself and his family are consequences of his conduct. The felony criminal conviction, freely accessible in this internet age, will mark Mr. Svonavec for the rest of his life. In addition, more significant punishments have been and will continue to be visited upon him.

### i. The Punitive Impact of the Fraud Penalty

The civil fraud penalty serves as "a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938). In substantial measure, these are punitive consequences that come under the heading of retribution. In a meaningful way, the kinds of retribution envisioned under §3553(a)(2) have already been imposed on Mr. Svonavec by the IRS without regard to any other form of punishment.

The civil fraud penalty is 75% of the amount of the underpayment attributable to fraud, plus penalty interest that accrues independently of the interest on the tax underpayment. The penalty strikes with both depth and breadth – not only is the initial rate of the penalty high, but the interest features make the fraud penalty the most financially punitive device in the Internal Revenue Code. Interest on the tax deficiency can be seen as depriving Mr. Svonavec of the benefit he achieved through using the money he ought to have paid in taxes over the years. The additional impact of the fraud penalty on the interest

5

HCNR0000115

assessed on the tax deficiency through the IRS, however, goes far beyond simply making the government whole for the loss of use of the tax money that Mr. Svonavec should have paid on time.

           **ii.**    **General Deterrence**

Summarized, §3553(a)(2)(B) tells the Court to consider "the need for the sentence imposed" "to afford adequate deterrence to criminal conduct." The basic idea underlying general deterrence is that those who are similarly situated as Mr. Svonavec, and who learn of his sentence, to be discouraged from engaging in the same or similar misconduct. It may be one of the trickiest interests to correctly assess. Too much too quickly leads to disproportion and injustice for the individual; and the effect on the public which learns of such a disposition is to mar, not encourage, respect for the law. R. Frase, *Punishment Purposes*, 58 Stanford L. Rev. 67, 80 (2010) ("Where offenders appear to have been unfairly singled out, respect for the law and law enforcement suffers."); *see also* Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev 1159, 1205 (2014) ("Deterrence properly informs sentencing only to the extent that it requires a hardship to be imposed for criminal offending. It does not require a particularly burdensome penalty, merely one that people would seek to avoid.").

In Mr. Svonavec's case, the ineradicable stigma of the conviction, the recoupment of the tax and far, far more through the payments he has already made affirm that persons situated as Mr. Svonavec will have rightful reason to fear the punishment for knowingly filing false tax returns.

6

HCNR0000116

It is also proper to recognize that the deterrent impact of the punishment in this one case has practical limits.[2] Criminal prosecution is not the only deterrence tool available to the IRS; civil audits and civil penalties are also effective tax compliance measures. Research demonstrates that general deterrence arises from not the severity of the punishment but the likelihood of detection, which may well be more effective than increasing the punishment for one man. The most significant deterrent effect of this sentence stems from the substantial financial penalties involved, rather than incarceration.

### iii.  **Specific Deterrence**

Mr. Svonavec respectfully submits that there should be no legitimate concern over Mr. Svonavec returning to criminal conduct. Apart from these charges, he has led a life marked by exemplary dedication to his family, his work, and his community. At 45, he is a veritable geriatric compared to the typical age range of those convicted of violating the law. He has a stable employment history, a high school education, abstained from drug use, and is a first-time non-violent fraud offender. These factors correlate positively with non-recidivism in the future.[3] On balance, Mr. Svonavec's tax misconduct in 2017 and 2018 is rightly viewed as an aberration in an otherwise stellar life as a citizen. What is necessary here, and what the record as a whole makes abundantly clear has happened, is the recognition that, as Oliver Wendell Holmes put it, "Men must turn square corners when they deal with the Government." *Rock Island, Arkansas & Louisiana R.R. Co. v. United*

---

[2]More than 271 million tax returns filed in fiscal year 2023. *IRS Data Book*, 2023 (Publication 55-B), Table 2, Number of Returns and Other Forms Filed, By Type of Return, Fiscal Years 2022 and 2023, available at http://www.irs.gov/pub/p55b.pdf (site visited July 26, 2024).

[3]U.S. Sentencing Commission, "Recidivism of Federal Offenders Released in 2010" (September 2021), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220210_Recidivism-Violence.pdf.

ClarkHill\K9143\435962\278359628.v1-8/7/24

HCNR0000117

*States*, 254 U.S. 141, 143 (1920). In all, there is a wealth of convincing reasons to expect that should Mr. Svonavec confront a choice on whether to break the law, he will make the right choice.

**C.** **The need to provide the defendant with education or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. §3553(a)(2)(B))**

Mr. Svonavec submits that the need to provide additional corrective treatment is not applicable here.

**D.** **The Guidelines and policy statements issued by the Sentencing Commission (18 U.S.C. §3553(a)(5)) and the Kinds of Sentences Available**

There is an effective presumption in favor of a probationary sentence here. While the total offense level of 11 initially suggests an imprisonment range of eight to 14 months, Mr. Svonavec qualifies for the Zero Point Offender Adjustment under §4C1.1 that became effective only on November 1, 2023.

Application Note 10 to §5C1.1 directs that when a defendant receives this adjustment and the applicable guidelines range falls within Zone B (as is the case here), "a sentence other than a sentence of imprisonment [i]s generally appropriate." Given that Mr. Svonavec's guideline range falls within Zone B, and a non-custodial sentence is considered appropriate, the only reasonable options under §5C1.1(c) is a sentence of probation. Imprisonment as discussed in §5C1.1(c)(1), is not suitable due to its contradiction with Application Note 10. Similarly, the alternative of a "a sentence of imprisonment" with substituted conditions under §5C1.1(c)(2) should be precluded, as it implies a term of incarceration, which is presumptively disfavored under Application Note 10. Consequently, this narrows the choices in §5C1.1(c)(3) – a sentence of probation with conditions that restrict liberty.

8

HCNR0000118

Because the offense is not a Class A or Class B felony (18 U.S.C. §3559(a)(1) and (2)), a sentence of probation is permissible (18 U.S.C. §3561(a)). A sentence of probation in this case is consistent with two authoritative directives. First, when Congress enacted the legislation creating the Sentencing Commission, it commanded that "The Commission *shall insure* that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense . . .." 28 U.S.C. §994(j) (emphasis added). Second, when the Sentencing Commission promulgated the §4C1.1 adjustment for Zero-Point Offenders, it also specified in Application Note 10 to §5C1.1 that when the defendant merits the Zero-Point Offender adjustment, a non-imprisonment sentence is presumptively appropriate. Considering the particular circumstances of Jason Svonavec's case, a sentence of probation is entirely consistent with the statutory mandate and §4C1.1.

## E.     The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct (18 U.S.C. § 3553(a)(6))

The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" commends a below-Guidelines sentence. Nationally, from 2015 to 2023, over 80% of defendants convicted of tax offenses with no prior criminal history and classified within Zone B of the guidelines received non-custodial sentences. Exhibit 11, (Sentencing Commission Data Capture). In this Circuit, the trend is similar, with 77% of defendants receiving non-custodial sentences with the vast majority receiving a below guideline sentence. Exhibits 12 & 13 (Sentencing Commission Data Capture). Lastly, in this district, 66.7% of defendants were granted probation, while 33.3% received only a fine. Exhibit 14 (Sentencing Commission Data Capture). These

9

HCNR0000119

Sentencing Commission's statistics do not include Court's taking into consideration of the

recently enacted Application Note 10, which additionally recommends that defendants

qualifying for a §4C1.1 adjustment and falling within Zone B should receive non-custodial

sentences when appropriate. U.S.S.G. §5C1.1, comment. n. 10.

 The probationary disposition we advocate is no outlier. Courts have sentenced

similarly situated defendants to below-guideline sentences. For example:

- In *United States v. Fred E. Cooper*, 394 F. 3d 172 (3d Cir. 2005), the Court held that a four-level downward departure was warranted because of the defendant's good work that were of a personal nature. The departure resulted in three years of probation for a defendant who pleaded guilty to one count of securities fraud and one count of subscribing to a false tax return and had a guidelines range of fifteen to twenty-one months.

- In *United States v. Tomko*, 562 F. 3d 558 (3d Cir. 2009), the Defendant plead guilty to tax evasion with a loss of $228,557, and after a variance, was sentenced to home confinement and probation. The factors relied upon by the court in support of the variance were "defendants lack of any significant criminal history, his involvement in exceptionable charitable work and community activity, and his acceptance of responsibility."

- In *United States. v. Gardellini*, the Court sentenced the Defendant to five years' probation and a fine of $15,000. 545 F. 3d 1089, 1090-91 (D.D.C. 2008). Gardellini was convicted of filing a false income tax return. Although his advisory guidelines range called for imprisonment 10-16 months, the court sentenced him to probation based on his acceptance of responsibility and low risk of recidivism.

- In *United States v. Kramer*, No. 2:17-CR-59 (Schwab, J.) (ECF 28), the Defendant's sentencing guideline range was 24-30 months' imprisonment based on a criminal loss of $423,473 resulting from the filing of false tax returns. The Court sentenced the Defendant to three years' probation, six months of home detention, 10 hours of community service, and a $15,000 fine.

- In *United States v. Clark*, the Defendant plead guilty to three charges of submitting false income tax returns. No. 2:18-CR-126 (Schwab, J.) (ECF 36). Despite a sentencing guideline range of 18-24 months and a restitution total of $391,472, the Court imposed a sentence of five years' probation.

10

HCNR0000120

This included six months in a halfway house, six months of home detention, and a $15,000 fine.

- *United States v. H. Ty Warner*, 792 F.3d 847, 857 (7th Cir. 2015) (tax loss of $5.6 million and a Guidelines range of 46-57 months; a sentence of two years' probation, 500 hours of community service, $100,000 fine); (upholding a below-guidelines probationary sentence where district court found defendant's "charitable works and the generosity they bespeak overwhelming").

## F. The need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

There is no need to provide restitution to the IRS; it has already been repaid. PSIR ¶¶ 5, 88. The plea agreement restitution provision contemplated the usual sequence in criminal tax cases: non-payment of the restitution amount as of the date of sentencing; entry of a judgment order specifying the amount of restitution; then collection activity, either by the U.S. Attorney's Office or the IRS, or both. Here, Mr. Svonavec paid the agreed restitution amount of $207,378 and an additional $266,676.84 to cover the fraud penalty plus interest on January 18, 2024. PSIR ¶¶5, 88. There is no need to enter an order of restitution[4].

## III. A MODEST VARIANCE TO ALLOW A SENTENCE OF PROBATION IS APPROPRIATE HERE

Courts may impose a sentence outside of the guideline range after consideration of all relevant departure provisions. *Gall v. United States*, 552 U.S. 38, 49 (2007). U.S.S.G. §1B1.1(a)-(c) (courts shall first determine the guideline range, then consider the departure policy statements, then consider the 18 U.S.C. §3553(a) factors as a whole). The ability to

---

[4] If restitution is ordered, and, as the plea agreement provides at ¶[A2 (PSIR ¶4), and if the IRS uses it as the basis for a restitution-based assessment as it is empowered to do under 26 U.S.C. §6201(a)(4) to commence collection on that assessment, potential administrative headaches lurk. The restitution can only be collected once and that "once" has already occurred in this case. We request that the Court forego entering an order of restitution.

HCNR0000121

vary preserves a district court's ultimate ability to impose a sentence that it views is "sufficient, but not greater than necessary" to serve the goals of sentencing in 18 U.S.C. §3553(a), regardless of the guideline range. *See United States v. Merced*, 603 F. 3d 203, 215 (3d Cir. 2010). There are several significant mitigating factors at work here, which, singly, or in combination, warrant a modest downward variance from the guideline range into Zone A.

## A. Extensive Charitable Contributions to the Somerset Community

The Court should grant a variance because of Mr. Svonavec's extensive charitable works and contributions to his community. Cf. *United States v. Howe*, 543 F.3d 128, 138–40 (3d Cir. 2008) (affirming downward variance based on defendant's character reference letters, first-time offense, military service, and remorse).

Mr. Svonavec is mindful that U.S.S.G §5H1.11 explicitly states that charitable and other good works are not ordinarily relevant in determining whether a departure under the Sentencing Guidelines is warranted. However, as Justice Stevens clarified, factors not ordinarily relevant in determining a guidelines sentence may still form the basis for a variance under 18 U.S.C. §3553(a). *Rita v. United States*, 551 U.S. 338, 364–65 (2007). *See also, United States v. Tomko*, 562 F. 3d 588 (3d Cir. 2009) (variance granted based upon employment record, community ties and extensive charitable good works); *United States v. Sullivan*, 414 Fed. Appx. 477, 481 (3d Cir. 2011) (health issues "…not so extraordinarily as to warrant a downward departure, but…sufficiently salient factor so as to vary from the Guidelines range by eight months under 18 U.S.C. §3553(a)"); *United States v. Serafim*, 233 F.3d 758 (3d Cir. 2000)(a pre-*Booker* case, the Third Circuit considered letters before the District Court offering descriptions of the defendant's exceptional generosity in terms of time, money and behavior to be extraordinary, justifying

12

HCNR0000122

a three-level downward departure); *United States v. Warner*, 792 F.3d 847, 857 (7th Cir. 2015) (upholding a below-guidelines probationary sentence where district court found defendant's "charitable works and the generosity they bespeak overwhelming"); *United States v. Robinson*, 2014 WL 1400197, at *5-6 (D.N.J. Apr. 9, 2014) (downward variance based on "dedication to charity and community service," the defendant's "strong family values and family support" and the fact that he had no prior criminal record). As evidenced in the exhibit of letters, Mr. Svonavec's charitable contributions go above and beyond, warranting a variance to Offense Level 8 in Zone A.

## B. Mr. Svonavec's Early Acceptance of Responsibility Furthered Important Law Enforcement and Judicial Goals and Ought to be Tangibly Recognized.

Mr. Svonavec authorized counsel to meet with the Government and negotiate an appropriate resolution of the investigation during the investigation and before the filing of the Information. By cooperating with the investigators as he did, Mr. Svonavec achieved a significant savings in agent time and other government resources. He freed the prosecutor to devote time to other cases. He freed the agent to spend on other cases the considerable time otherwise necessary to investigate Mr. Svonavec's matter, furthering the interest of justice that much more. He freed the Court to attend to its busy docket. This is behavior to be encouraged. And the only meaningful encouragement can be had by taking this into account in granting a variance.

## C. Concrete Actions Demonstrating Genuine Acceptance of Responsibility

"Deeds, not words" runs the Roman aphorism. Through his actions of rectifying the financial harms he was connected to and cooperating with the investigators, Mr. Svonavec has shown a clear commitment to righting his wrong. There is good reason to

13

HCNR0000123

believe Mr. Svonavec has already accomplished a significant rehabilitation. Mr. Svonavec instructed his attorneys to arrange a guilty plea. After some back-and-forth concerning the tax loss amounts, he agreed to the terms proposed.

Another deed of significance here is Mr. Svonavec's payment of the $474,054.84 (restitution + penalty +interest) to the IRS. To be sure, $207,378 of that was a tax liability that Mr. Svonavec owed as a matter of law. Still, how often has the Court confronted defendants who repay little or nothing of their ill-gotten gains, even when they had the means? The unpleasant reality is that the Justice Department's ability to recover on restitution orders is feeble and apparently getting worse. U.S. Government Accountability Office, "Federal Criminal Restitution: Most Debt is Outstanding and Oversight of Collection Could Be Improved", GAO Study 18-203 (February 2, 2018), available at https://www.gao.gov/products/gao_18-203 (using DOJ data, study computes $110 billion in previously ordered restitution debt remains outstanding as of end of FY2016); *Wall Street Journal*, "Billions Going Unrecovered", September 18, 2014, p. C1 (attached as Exhibit 15). Mr. Svonavec's restitution payment marks a tangible embodiment of his remorse at participating in the misconduct and his repudiation of it.

### D.    Combination of factors

While courts have varied from the guidelines based on a single §3553(a) factor warranting a sentence above or below the guideline range, they also may vary where a combination of §3553(a) factors makes the case unusual and so warrants a non-guidelines sentence. *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 149 (3d Cir. 2009) (court "has the discretion to consider a variance under the totality of the §3553(a) factors (rather than one factor in isolation) on the basis of a defendant's fast-track argument, and . . . such

14

HCNR0000124

a variance would be reasonable in an appropriate case"). In this case, Mr. Svoanvec has several combining factors that support the Court in granting a downward variance.

## IV.   A SENTENCE OF PROBATION WITH MODIFIED CONDITIONS IS AP-PROPRIATE HERE

### A.   A Meaningful Community Service Obligation

The most lasting lesson of *United States v. Booker*, 543 U.S. 220 (2005) and its progeny is the absolute primacy of §3553(a) in relation to the Sentencing Guidelines. The so-called "parsimony principle" of §3553(a) obliges the Court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." In Mr. Svonavec's case, the sentence minimally sufficient to satisfy the purposes of sentencing is one involving community service and a fine.

The Supreme Court in *Gall v. United States*, 552 U.S. 38, 48-49 (2007) wrote that a term of probation involves a substantial restriction of liberty and is, itself, a meaningful restraint of liberty. A significant community service obligation will allow the Court to punish, to deter, to foster Mr. Svonavec's rehabilitation, while not inflicting a disproportionate injury. *Gall*, 128 S.Ct. at 595-96 & n. 4. In other words, probation may be punishment enough. See S. Rep No. 98-225, at 92 (1983) ("It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose.").

As the nature of his offense was failure to meet his duties to the United States, the punishment should aim to help him better recognize he is part of the federal community. Mr. Svonavec should be sentenced to an appropriate term of probation coupled with a requirement of community service.

### B.   The Conditions of Probation Should Permit Mr. Svonavec The Op-portunity to Possess Firearms and Ammunition for Hunting

15

HCNR0000125

A standard discretionary condition of probation requires that a probationer "refrain from possessing a firearm, destructive device or other dangerous weapon." 18 U.S.C. §3563(b)(8). A mandatory condition requires that a probationer "not commit another Federal, State, or local crime during the term of probation. 18 U.S.C. §3563(a)(1). The Sentencing Guidelines mirror these statutory commands. *See* U.S.S.G. §5B1.3(a)(1).

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court announced a test for evaluating weapons dispossession enactments against rights guaranteed under the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

Here, Mr. Svonavec's offense – filing false income tax returns – involved no nexus to firearms or ammunition. Under *Bruen*, it is therefore incumbent on the government to demonstrate that the automatic prohibition of firearms and ammunition based solely on conviction of a felony alone "is consistent with the Nation's historical tradition of firearms regulation." No demonstration has been made, and is thus contrary to the Second Amendment, as the Third Circuit ruled in *Range v. Attorney Gen. United States of Am.*, 69 F. 4th 96 (3d Cir.2023) (*en banc*), *cert.* granted, judgement vacated sub nom. *Garland v. Range,* 23-374, 2024 WL 3259661 (U.S. July 2, 2024) for consideration in light of *United States v. Rahimi*, 144 S.Ct. 1889 (2024). As applied to Mr. Svonavec, these conditions of probation are unconstitutional under the Second Amendment and ought not be imposed.

## V.   CONCLUSION

Mr. Svonavec has led a life of persistence, achievement, and dignity, consistently demonstrating concern for the people in his community. Thus, a dramatic departure from

16

HCNR0000126

a wasted former life was not necessary. While the necessary insight arrived too late for

Mr. Svonavec to avoid his offense, it has arrived now. His offense should be viewed as a

singular deviation from an otherwise commendable life.

The application of the §3553(a) factors to Mr. Svonavec requires the court to

consider various circumstances in determining a sentence that is sufficient but not greater

than necessary to achieve the goals of sentencing. Mr. Svonavec's status as a non-

violent, first-time offender, his charitable works, his early acceptance of responsibility,

his full payment of restitution. Based on these factors, the Court may properly determine

that a sentence of probation is a just sentence in this case.

Dated: August 7, 2024

Respectfully submitted,

| CLARK HILL, PLC | ZATKO LAW, LLC |
|---|---|
| By: /s/ Robert J. Ridge<br>Robert J. Ridge, Esq. (PA I.D. # 58651)<br>(412) 394-2440<br>*rridge@clarkhill.com*<br>By: /s/ Neel Kapur<br>Neel Kapur (PA I.D. # 329518)<br>(412) 394-7780<br>*nkapur@clarkhill.com*<br>Clark Hill PLC<br>One Oxford Centre<br>301 Grant Street, 14th Floor<br>Pittsburgh, PA 15219<br>(412) 394-2555 FAX<br><br><br>*Attorneys for Defendant Jason R. Svonavec* | By: /s/ Matthew R. Zatko<br>Matthew R. Zatko (PA I.D. # 79988)<br>(814) 443-1631<br>*mrzesq@hotmail.com*<br>Zatko Law, LLC<br>202 East Union Street<br>Somerset, PA 15501<br>(814) 445-7570 Fax<br><br><br>THE GRAIL LAW FIRM<br><br>By: /s/ Efrem M. Grail<br>Efrem M. Grail, Esq. (PA I.D. #81570)<br>(412) 332-9101<br>Egrail@graillaw.com<br>The Grail Law Firm<br>428 Boulevard of the Allies, Suite 500<br>Pittsburgh, PA 15219<br><br>*Attorneys for Defendant Jason R. Svonavec* |

HCNR0000127

# EXHIBIT 1

HCNR0000128

**Character Letter on Behalf of Jason Svonavec**

Daniel W. Aust

167 Aust Dr.

Friedens, PA 15541

814-289-3694

06/29/2024


Honorable Cathy Bissoon

United States District Court Judge

Western District of Pennsylvania

Joseph F. Weis, Jr.

U.S. Courthouse

700 Grant Street

Pittsburgh, PA, 15219


Dear Judge Bissoon,

     I hope this letter finds you well, and I greatly appreciate your time in the reading of it. In light of Jason Svonavec's recent legal circumstances (which I am sure you are well aware of), I felt compelled to write a brief letter about the real Jason Svonavec. The Jason Svonavec I know.


     I would like to briefly introduce myself and how it is I came to know and become acquainted with Jason. I was born right here in Somerset County in 1959 and am currently 64 years old as of the writing of this letter. When I graduated from Somerset High School in 1978 without work and a real direction in my life I spoke with Jason's grandfather who owned a surface coal mine in Somerset County and asked if he needed any help at the mine. His grandfather shook my hand and gave me my first real opportunity in my life. That opportunity was running mining equipment which lead to a long career in the industry and the opportunity for me to provide for my family and raise my children.

     Years later, Jason's father Rick took the reins and the torch was passed down. After years of working for Rick, like anything else in life we sometimes need a change. That change was deciding to go to work for my brother's roadway line painting company and a step away from mining. Fast forward 22 years, and again it was time for a change. This time the change was the opportunity to work for Jason's business (Heritage Coal) and the 3rd generation of one of the most honorable families that I know.

HCNR0000129

**Character Letter on Behalf of Jason Svonavec**

Being around for many years at work I was able to know Jason since he was born and saw him grow and raised with dirt on his hands and sweat on his brow. Coal mining is a hard way to make a living and has plenty of ways to test a man's character. I've seen many men over the years crack under the pressure of the long hours and tough conditions, many men, but not Jason. Jason's character was tested over and over again, but never faltered in all the years I've known him. I can honestly say that the time I worked for Jason over the course of 5 years was my most enjoyable time working anywhere. The way Jason conducted himself and treated his employees was unmatched. In the time I worked for Jason I was treated many times better than any brother could treat me. Jason always went out of his way to make sure each employee was at their best, even on the bad days, he never faltered. Jason didn't have to treat us so well or spend so much time doing it, but he did because that's truly who he is. Because of numerous examples of kindness that Jason shows and his unrelenting work ethic he has all my respect and dignity in the world.

I believe these actions say a lot about a man and over the course of working for Jason I saw just how much he cared not only for his employees and family, but for the community. Over the years I've seen numerous charities and lives he's touched and brightened. Probably my favorite was the New Centerville Volunteer Firemen and Jason's role in saving not only the Firemen's event venue, but quite possibly the entire volunteer fire company in New Centerville PA. These folks were in a peril of losing everything they worked so hard for because a landowner no longer wanted the firemen holding fundraising events on their property. One of these types of events is truck and tractor pulls which is significant for the Firemen to raise funding for their operations and continued tasks in the area.

Jason sprang into action to save not only the venue, but quite possibly the entire New Centerville Fire Company. Jason donated his blood sweat and tears and put months of his own time and work and donated the use of significant equipment and built a new truck/tractor pulling track. This was a significant project and if it wasn't for Jason's generous heart this project wouldn't have ever happened. The best part of this project is the positive impact it's had on Somerset County. This impact can be seen on all the smiling faces of the children who visit the track and are inspired to work hard in life by all the great events held there. This track and the Firemen are a staple in the community and represent hope, which in today's day in age we need much more of.

In my book Jason is a true genuine gentleman and would give you the shirt off his back. He is one of the most hardworking men I've ever met who truly personifies the essence of the 'American Spirit' and it's been an honor getting to know him.

I know no one in this world is perfect and I would like you to simply better understand the man standing before you.

Again, I truly appreciate your time in reading my letter.

Sincerely,

Daniel W. Aust

# EXHIBIT 2

HCNR0000131

Debra Svonavec
252 Red Lodge Lane
Somerset, Pennsylvania 15501
svonavecdk@verizon.net
814-442-3051
06/26/2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, Pennsylvania 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of Jason Svonavec, whom I gave birth to 45 years ago. I am pleased to offer my support and to share my observations of my son's character.

Jason was the second of four children born into a middle class, blue collar, hard working family. He was raised on a farm, where he had daily chores including planting and picking strawberries, corn, potatoes and other vegetables. He raised a variety of animals through the 4-H program, from steers, pigs and helped his sisters with their sheep. Jason learned how to drive tractors, skid loaders, excavators and pretty much anything with a motor, from a very young age, under the supervision of his father and grandfather. In the summer months, he was up very early to go with his grandfather or dad and would come home as it was getting dark, dirty but with a big smile on his face because he had fun, while learning good work ethics and responsibilities. At the time, he did not realize this, but it was shaping him into the responsible, successful businessman that he is today.

Jason was quick to lend a helping hand, without complaining most of the time, wherever and whenever it was needed. He would accompany me into the nursing homes and state hospitals to Christmas carol, make crafts with the mentally challenged, which helped to mold his character. This also taught him to always be kind and compassionate to others and not be judgemental.

Our family has been involved in the coal industry and farming dating back to Grandpa Svonavec in the early 1900's. The Svonavec name is very well respected in Somerset County, and known for their honesty, kindness to others and work ethics.

Jason's upbringing reflects these values. We attended church every sunday, where he served as an altar boy for a few years, and also attended catholic school.

I am very proud of his continuing work ethics and giving back to the community. He is teaching his own son the things that he learned as a child, as well. The Svonavec name and values will live on. I am confident that Jason will continue to make a positive impact in the community.

Thank you for considering my perspective regarding Jason. Should you require any further information, please do not hesitate to contact me.

Respectfully,

Debra Svonavec

# EXHIBIT 3

HCNR0000134

Richard Svonavec
252 Red Lodge Lane
Somerset, Pennsylvania 15501
rlsvonavec@gmail.com
814-483-0446
06/26/2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.,
U.S. Courthouse
700 Grant Street
Pittsburgh, Pennsylvania 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of my son, Jason Svonavec, whom I have been very close to his entire life. I am pleased to offer my support and share my observations of his character.

Jason has always been a hard worker from childhood to present times. He has always been a quick learner and pays attention when being taught things. He would accompany me to the strip jobs to learn how to operate equipment, such as dozers, loaders, scrapers, and how the industry in general works, and what can be done to make it better, always being mindful of the enviroment. Because he learned these things at a young age, it has helped him develop his own business style and the common sense needed to carry it out.

When he graduated high school, Jason bought his own pick up truck and small trailer to haul parts and small pieces of equipment to the mid west. Then he would haul hay bales and watermelons back to Pennsylvania to sell. He continued doing this for a few years, until he purchased a larger Semi Truck and Low Boy trailer to haul heavy equipment. From there he purchased his first Excavator and Dozer and worked with several larger contractors, that were involved with Bridge work. He was growing his business, but always had an active plan for a brighter future. As he was growing, he hired several employees to help build his business and fast forward to 2024, where he created jobs for 150 employees and their families. In turn, this has led to many others, expanding their own operations, such as trucking, fuel, parts and equipment companies.

It makes me proud to see Jason giving back to the community. He donated funds to the Rockwood School Library, to private individuals, many donations and most recently to building a new tractor pulling track and facility to the local New Centerville Volunteer Fire Department. These are just a few of the positive things he has done for our community.

He continues to show he is reliable, helping me out with small projects when I ask, and shows leadership and dedication to his employees, helping them when they are in need as well.

I know if my father and grandfather were alive, they would be very proud of Jason, as he continues the Svonavec legacy and tradition of helping others. I am confident that he will continue to make a positive impact on others.

Thank you for considering my perspective on Jason. Should you require any further information, please do not hesitate to contact me.


Respectfully,


Richard Svonavec

EXHIBIT 4

HCNR0000137

**SCHROCK CHIROPRACTIC CLINIC**
441 WEST PATRIOT ST.
SOMERSET, PENNSYLVANIA 15501

TELEPHONE (814) 445-7310
FAX      (814) 445-3409

S. L. SCHROCK, D.C.                                      KIRK D. SCHROCK, B.S., D.C.

Kirk D. Schrock, D.C.
441 West Patriot Street
Somerset, PA  15501
Email:  oakhill@zoominternet.net
814-445-7310

June 27, 2024

Honorable Cathy Bissoon
United State District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA  15219

Dear Judge Bissoon,

I am writing this letter on behalf of Jason Svonavec as a character reference.  I have known Jason and the Svonavec family for most of my life, over 40 years.  I have always known the Svonavecs to be some of the hardest working people I have ever met.  Jason and his family have owned and operated many large businesses and have been large employers in the community. Their workers have been very loyal and are very generously compensated.  I think Jason is respected by his employees, in large part, because they know he has built his businesses from the bottom up.  He has worked hard or harder than any of them.  He is a hands on owner, and is known to take care of his employees.  He looks out for them, both as people and through very generous benefits.

I have been involved with Jason as a neighbor, friend and through my business as a Chiropractor providing care to Jason and his family.  I find Jason to be a very likeable person. He is a man of his word.

HCNR0000138

One of my professional experiences with Jason illustrated his outstanding character and generosity. Jason personally called my office to refer one of his employees for care regarding an injury he received. I said I'd be happy to help. I provided care for a number of months until he had recovered. All the while Jason would frequently contact me to ask on his progress, update me with any concerns as to his ability to work, and furthermore paid all of his expenses. I have never had an employer so involved with an employee's care and welfare in my 40 years of practice. I was very impressed.

I hope you find this letter helpful in illustrating Mr. Svonavec's character. If I can be of any further assistance please contact me at your convenience.

Very Sincerely Yours,

Kirk D. Schrock, D.C.

# EXHIBIT 5

HCNR0000140



133 Morocco Street, PO Box 391 Somerset, PA 15501
Telephone: 814-444-9353  Fax: 814-444-4099

June 24, 2024

Honorable Judge Cathy Bissoon,

RE: Character Letter on Behalf of Jason Svonavec

My name is John Morocco, owner of Morocco Welding, LLC. We are a heavy duty manufacturer that builds dump truck bodies along with heavy truck fabrication.

I have known the Svonavec family for most of my life, having known 3 generations. They have all been hard working individuals. Jason's father and grandfather we involved in the coal business while Jason was younger. Jason is same age as my middle child. They went to St. Peter's Catholic School together and continued on to complete high school together. Jason worked for me at my business while he was in high school. After graduation he went on to be a successful entrepreneur in the trucking industry. After being in the trucking industry Jason began operating a mine company that employed 150 people. Jason always took pride in having a business that pays his employees a fair wage and he always treats people the way he would want to be treated. Jason was always well respected by not only by his employees but many people in the surrounding communities. I feel this is a wonderful trait that has been handed down from his family.

I myself being a part owner in Jennerstown Speedway, I have seen firsthand the generosity Jason has given to many people. We have fund raising benefits at the speedway for The Children's Aid Home and Children's Hospital of Pittsburgh every year and Jason goes above and beyond to give at these events. Jason is driven more by success than the monetary value of a business.

I am writing this letter to help Jason be seen as a respected individual around our community.

Sincerely,

John Morocco
Owner, Morocco Welding, LLC

# EXHIBIT 6

HCNR0000142

# JAMES R. CHRISTIE
## Attorney at Law
**P. O. Box 1133**
**Bridgeport, West Virginia 26330**
Phone: (304) 842-5461
Fax:    (304) 842-0624
Email: james.christie@thechristies.org

June 20, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr. U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Re:    United States of America v. Jason Svonavec

Dear Judge Bissoon:

I am writing in reference to Jason Svonavec, defendant in the above-referenced criminal matter. I am writing to offer my support and to share my observations of his character. As a matter of disclosure, I am not only an attorney, but also a former police officer. I am not, however, a criminal attorney. Lastly, I represented Mr. Svonavec and his various companies for over ten (10) years.

I am aware and cannot explain or justify the actions of Mr. Svonavec surrounding his guilty plea to the offense of tax fraud. I can only say that bad things happen to good people and good people at times make mistakes. These mistakes do not mean that a person has a criminal motive, or a criminal mind set. I have found Mr. Svonavec to be a good person, who created hundreds of jobs for local citizens of Somerset County and shared his success as a coal operator with the community through generous donations and the community volunteer work of Mr. Svonavec and his lovely wife, Angela.

I understand that Mr. Svonavec has freely worked with the investigators and prosecutors and has expressed his remorse and regret for his action. I further understand that he has made restitution for his actions. Jason must now live with this for the remainder of his life. The impact on his reputation and his family has taken a large toll.

As a former police officer and a student of the law, I have witnessed over and over again that folks like Mr. Svonavec, who have had an otherwise clean record but make an inexcusable mistake, are penalized by their own mental anguish and community regard. Sentencing a person to institutional confinement, who is not by nature a "criminal," does nothing more than damage, or even destroy, the family unit, and places an additional burden on the public and State for the cost of confinement. A cost that is already out of control.

HCNR0000143

Honorable Cathy Bissoon
United States District Judge
June 20, 2024
Page 2


My experience with Mr. Svonavec is that he is a hard worker, usually on the job by 4:00 a.m. and getting home between 7:00 p.m. and 9:00 p.m. He mentors his employees and has created a work environment conducive to a desired workplace.

Based upon the aforesaid, I urge and request your consideration of probation for Jason Svonavec. A probated sentence will allow him to provide for his family, give back to the community and avoid the high cost of confinement. Thank you for your time and consideration in this matter. Please feel free to contact me if you require any further information.


Very truly yours,


JAMES R. CHRISTIE


C:      Matthew R. Zatko, Esq.
        Zatko Law, LLC
        202 East Union Street
        Somerset, PA 15501

HCNR0000144

# EXHIBIT 7

HCNR0000145

HCNR0000146

Case 2:23-cr-00264-CB   Document 32-1   Filed 08/07/24   Page 19 of 94

Hello my name is Tray A. Slayton I worked for Jason Luvenous for 6 ½ years as an employee. I couldn't have asked for a better guy to work for. he always treated everybody great. I shared in his growth. I would go back to work for

any time he called. I hope the mistake he made don't keep him from being the person he is by not being able to help the community out.

Tray A. Slayton

TROY A. SLAYTON

www.ClevelandBrothers.com

1-888-232-5948

# EXHIBIT 8

HCNR0000147

Eliazer Manuel

387 Olinger ST
23
Meyersdale, PA 15552

6/24/2024

To Whom It May Concern:

 I am writing this letter as a character reference for Jason Svonavec. I have known Jason for eight years and I can attest that he is a man of character.

 In my experience, Jason has always been an honest, hardworking, and responsible individual. I have had the privilege of not only having him as an employer but also as a friend.

 As an employer, he treated everyone fairly. He did his best to make sure that the work environment was safe to work in and that you had the necessary items to complete your work. He expected a good day's work but he paid you fairly and on time.

 As a friend, he is someone I could count on if I needed a helping hand. And he always treated my family in a respectful and courteous manner.

 In my opinion, Jason has had a positive impact on those around him, both in the capacity of employer and friend.

Sincerely, *Eliazer Manuel*

# EXHIBIT 9

HCNR0000149

Jeffrey L Lape

2354 Garrett Road

Rockwood Pa 15557

lhlbuilders@gmail.com

(814) 483-6186

June 24, 2024


Honorable Cathy Bisson

United States District Court Judge

Western District of Pennsylvania

Joseph F Weis, Jr.

U.S. Courthouse

700 Grant Street

Pittsburgh, Pa 15219


Dear Judge Bissoon,


I am writing this character letter on behalf of Jason Svonavec, whom I have known for 10 years, starting out as a neighbor and later becoming a friend. I am pleased to offer my support and to share my observations of his character.


Jason Svonavec has demonstrated qualities that I deeply admire. I own a small construction business in our community and at any point if I have ever needed a helping hand, a need for equipment or a general favor he has always been there for me with no questions asked. He has over the years generously given monetary donations to the school that my children attend in order to help further their education and the children in the local district. He has kindly made donations to our recently added Veterans Park in our local neighborhood. Last year, our local Jubilee that has been tradition to our community was in discussion of closing and he took a stand, without question, to not only offer his equipment but he also built a new track and devoted endless, volunteer hours to make sure that our Jubilee would be able to run on the dates as it has for roughly 75 years. From my stand point he has always been welcoming in our community, always has kind words to say and has never been anything more than a generous, hardworking and always willing to lend a hand to someone in need.

HCNR0000150

I am confident that Jason Svonavec will continue to make positive changes and be an attribute to our small town if given the chance.

Thank you for the considering my perspective on Jason Svonavec. Should you require any further information, please do not hesitate to contact me.

Sincerely,

Jeff Lape

HCNR0000151

# EXHIBIT 10

HCNR0000152

To Whom it May Concern,

 I am Scott Boyce and I have worked for Jason Svonavec for the past three and a half years. Jason has been a very caring and reputable boss. He has done many things for not just Meyersdale Community but several other municipalities within the Somerset County.

 Jason has paid to replace a bridge that was damaged. The state did not have the funding to cover a new bridge, so they condemned it. This replacement was completely covered by Mr. Svonavec out of the goodness of his heart. He knew that many people traveled this road, especially the Amish and local farmers and they would have to travel several miles to get to the grocery store or into town. He did not ask for any reimbursement or for public acknowledgement for this project.

 Jason has paid his employees to pressure wash the Meyersdale football field bleachers prior to football games, graduation and other sporting events. He has donated money to the school to help provide air filters for not just the high school but all three facilities. He has also provided funding for other school events and projects.

 He has provided loaders and manpower to help the boroughs remove large piles of snow when the weather has caused travel delays and snow buildup on sidewalks and public parking areas. He had provided this free of charge and with his fuel and equipment.

He has allowed meetings to be held in his office space to help community groups like Somerset Trust Company have the space needed to have local meetings.

Jason has provided the community with many good paying jobs. He is committed to helping not only the schools where his children attended but many schools within the County.

I feel that Jason was not only one of the best bosses that I have had but that he is a very upstanding citizen.

     Sincerely,

     Scott Boyce

HCNR0000153

# EXHIBIT 11

HCNR0000154



UNITED STATES SENTENCING COMMISSION
## INTERACTIVE DATA ANALYZER

HOME    MAJOR CRIME TYPES    CRIMINAL HISTORY    SENTENCING OUTCOMES    GUIDELINE APPLICATION    METHODOLOGY

Plea Status    |    Sentence Type    |    Sentence Length    |    Fine/Restitution Amounts

**Sentence Type for Sentenced Individuals**
Fiscal Year 2015,2016,2017,2018,2019,2020,2021,2022,2023

Fine Only 0.9%
Prison and Altern...

Prison Only 15.5%

Probation and
Alternatives 15.2%

Probation Only 68.4%

The figure includes the 111 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure.
Alternatives include all cases in which individuals received conditions of confinement as described in USSG §5C1.1.
**FILTER:**
Fiscal Year: 2015,2016,2017,2018,2019,2020,2021,2022,2023; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: All;
Citizenship: All; Education: All; Crime Type: Tax; Guideline: §2T1.1; Drug Type: All; Sentencing Zone: B; Criminal History: ; Career
Offender Status: Exclude Career Offenders.

**Supervised Release Ordered**
Fiscal Year 2015,2016,2017,2018,2019,2020,2021,2022,2023

Yes 15.5%

No 84.5%

The figure includes the 111 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure.
**FILTER:**
Fiscal Year: 2015,2016,2017,2018,2019,2020,2021,2022,2023; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: All; Citizenship: All; Education:
All; Crime Type: Tax; Guideline: §2T1.1; Drug Type: All; Sentencing Zone: B; Criminal History: ; Career Offender Status: Exclude Career Offenders.

**Fiscal Year**
Fiscal Year    2015-201
Clear Filter ×

**Geography**
Circuit    --Select--
State    --Select--
District    --Select--
Clear Filter ×

**Demographics**
Race    --Select--
Gender    --Select--
Age    --Select--
Citizenship    --Select--
Education    --Select--
Clear Filter ×

**Crime Type**
Crime Type    Tax
Clear Filter ×

**Primary Guideline**
Guideline    §2T1.1
Clear Filter ×

# EXHIBIT 12

HCNR0000156



HCNR000019

# EXHIBIT 13

HCNR0000158



HCNR000019

# EXHIBIT 14

HCNR0000160



# EXHIBIT 15

HCNR0000162

STOCKS IN THE NEWS C4 | MUTUAL FUNDS C5 | MARKETS DASHBOARD C6

# MONEY & INVESTING

## Scrutiny Benches Bank

Credit Suisse Forced to Sit Out Buyouts GLOBAL FINANCE C3

© 2014 Dow Jones & Company. All Rights Reserved.

THE WALL STREET JOURNAL.

Thursday, September 18, 2014 | C1

DJIA 17156.85 ▲ 24.88 0.15%   S&P 2001.57 ▲ 0.13%   NASDAQ 4562.19 ▲ 0.21%   10-YR. TREAS. ▼ 4/32, yield 2.608%   OIL $94.42 ▼ $0.46   EURO $1.2865   YEN 108.37   See more on C6 and at WSJMarkets.com



## Massachusetts Is Going Greener
### MONEY BEAT C4

# Billions Going Unrecovered

## Justice Department Doesn't Expect to See Majority of $97 Billion Criminals Owe

BY MICHAEL ROTHFELD
AND BRAD REAGAN

The Justice Department has been unable to recover $97 billion arising from enforcement actions and other criminal cases, an amount that has tripled since 2004, highlighting prosecutors' challenges in tracking down money stolen from investors and others.

The uncollected debts—which include criminal fines owed to the Justice Department from companies and individuals and restitution payable to investor victims—have grown because judgments have steadily increased but the percentage collected hasn't.

In 2004, for instance, the Justice Department collected 28% of the amount of new criminal debts and interest in that period; that percentage dropped to 22% in the 2013 fiscal year that ended Sept. 30, according to federal statistics.

A Justice Department spokesman said the agency "makes strenuous efforts to identify the assets of fraudsters and other financial criminals and to collect as much restitution as possible from them." According to the Justice Department, just $10 billion of the $97 billion outstanding is able to be collected.

The spokesman said enforcement actions in recent financial-fraud schemes have" resulted in large restitution orders based on victims' losses but "not always commensurate with the defendant's gain or ability to pay." He also noted that the agency collected $8.1 billion in civil and criminal actions in fiscal 2013, nearly triple the cost of the department's 94 U.S. attorney's offices and its litigating divisions. Recoveries have been modest in some prominent cases. The Justice Department has received a fraction of a judgment from Jordan Belfort, founder of shuttered brokerage firm Stratton Oakmont and depicted by Leonardo DiCaprio in "The Wolf of Wall Street."

In 2003, a federal judge ordered Mr. Belfort to pay $110.4

Please turn to the next page

## Meager Returns
White-collar enforcers obtain judgments for, far more than is paid. Percentages of sanctions that have been collected.

### Justice Department[*]
Total collected, 2004-13: **$22.2 billion**

| FY2005 | 10 | 13 |

2013 **21.7%**

### Commodity Futures Trading Commission[†]
Total collected, 2004-14: **$4.6 million**

| FY2005 | 10 | 14 |

2014 **0.01%[+]**

[*]Percentages show amount collected in the year, regardless of what year it was ordered. le, vs. amount ordered in that year. Shows debts collections for victim restitution and disgorgement of profits, not fines. †For fiscal years. Collected includes penalties and recoveries. ‡Through April 30

Sources: Justice Department; CFTC                          The Wall Street Journal

## Diamond Prices Are Caught Between a Rock and a Hard Place



# Dow Hits a Record, Buoyed by the Fed

HCNR0000163



'er LIBOR.'

on.²
orders,
to handle.

ailability
e-borrow

discounted
ny per
act and
ble for

-/A-2
Poor's.

contact an
calling toll free
by visiting:

**urnkey**

**Brokers**
*for Institutions*

# Billions Go Unrecovered by Prosecutors

*Continued from the prior page*

million in restitution after he pleaded guilty to securities fraud and money laundering in 1999. He has paid $11.8 million so far, largely from the forfeiture of properties, while earning income from selling his story and other endeavors.

Last year, the Justice Department moved to have him declared in default, but it withdrew the motion pending negotiations.

"Either they are just not very clever or the people they are up against are extremely smart," Bob Shearin, 67 years old, of Manhattan Beach, Calif., a victim of Stratton Oakmont, said of the government.

Diane Nygaard, a Kansas City attorney representing Stratton Oakmont victims, said in a letter to prosecutors earlier this year that victims are "outraged" that Mr. Belfort is "living so well without having made restitution to them."

In a statement, the U.S. attorney for the Eastern District of New York said: "We continue to make strenuous efforts to find every asset of Mr. Belfort's and hold him accountable."

Mr. Belfort didn't respond to requests for comment. He now is a motivational speaker and has said in recent media interviews that he intends to continue making restitution payments from his income, as required by his plea agreement.

The government has had some successes. The Justice Department has collected about $4 billion of $17.5 billion in principal investments lost in Bernard Madoff's Ponzi scheme. A bankruptcy trustee has collected $9.8 billion more.

Aside from the Justice Department, other financial watchdogs have had trouble collecting judgments. In a page-one article Wednesday, The Wall Street Journal detailed how the Securities and Exchange Commission collected 42% of the amounts defendants were ordered to pay in the three years that ended last September, down from 63% in the prior three-year period.

The SEC's enforcement director, Andrew Ceresney, said the SEC's collection successes are "unmatched" and the agency is aggressive in pursuing debts "when assets are available."

In cases brought by the Commodity Futures Trading Commis-

sion, a regulator of the commodity and futures markets, the government has collected 51% of $4.8 billion in fines ordered in the decade ending in early 2013.

But that money goes back into the U.S. Treasury, under federal law—not to victims. The CFTC reported that just $4.8 million to



*Jordan Belfort owes millions of dollars in unpaid restitution from his 'Wolf of Wall Street'-era fraud.*

aid harmed investors had been collected out of $3.7 billion—one-tenth of 1%—in judgments over the same period.

CFTC officials said additional money may have been collected in those cases through court-appointed receivers, but the enforcement agency couldn't say how much, if any, was collected that way. Officials also said collection rates are low because wrongdoers frequently spend all their money and declare bankruptcy.

Often, the government can't get anything back at all. Consider the case of Thomas L. Mitchell, who pleaded guilty in 2010 to a Ponzi scheme in which he defrauded Los Angeles County transit workers out of their retirement savings. A judge in his criminal case ordered him to pay $7.1 million in restitution.

Mr. Mitchell is serving a nine-year sentence in federal prison. He has said he had no money, and since he is in prison, hasn't been able to earn any. The government didn't find any, and no one is looking anymore.

Patricia Mayes, who drove a train for 23 years before retiring at 52, said the fraud cost her $312,000, all of her savings.

In a 2010 email to Mr. Mitchell, Mrs. Mayes wrote: "YOU HAVE NO RIGHT TO TAKE WHAT I WORKED FOR AND LEAVE ME DESTITUTE AND HOMELESS."

A spokesman for the U.S. attorney's office in Los Angeles said that, as in many cases, "we will likely recover very little, if any, money for the victims." He said investigators "found evidence of extravagant spending and no evidence of remaining cash."

# High-Frequency Trader to Pay $16 Million to SEC

*Continued from the prior page*

ment, Panther didn't admit or deny wrongdoing.

Latour routinely violated, the SEC said. For at least two years, Latour underestimated the

between about $2 million and $28 million, Capital serves as a cushion against losses.

number of ongoing investigations of such conduct," he said.

The SEC also charged former

# EXHIBIT 16

HCNR0000165

James F Barron
Barron Trucking LLC
10314 Somerset Pike
Somerset, PA 15501-9003
jrjbarrontrucking@outlook.com
(o) 814.443.3795 (c) 814.279.8828

June 24, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of Jason Svonavec, whom I have known since he was a young adolescent accompanying his father at various coal mines. I wish to share my experiences and support of Jason's character.

I have been in the trucking industry since 1969 as the owner of Barron Trucking LLC, formerly James F Barron Trucking. My relationship with the Svonavec family began in the early 70's hauling coal for Jason's grandfather Steve Svonavec, Svonavec Coal Company. Over the years genuine friendships have been established between me and the Svonavec family.

I remember Jason as a young man in his early twenties starting his first business, Fearless Leasing and thinking to myself that there is a young man with great ambition; he reminded me of myself at his age. Jason had a dream, goals, that he was not afraid of chasing. When Jason met his now wife, Angela, together they grew Jason's dream with the founding of Heritage Coal Company. Due to his ambition and work ethic Jason created hundreds of jobs for individuals in an economically repressed county.

During the COVID 19 pandemic Jason, through Heritage Coal, was a major factor in keeping my trucking company operating. The coal industry has always been a volatile industry but never more so than during the pandemic, in my experience. Employee retention was priority during the pandemic considering individuals were making more on federal pandemic unemployment due to receiving additional $600 weekly benefits. Prior to the pandemic I hauled coal for two other mining companies. Those companies were not able to provide sufficient hauling to keep my drivers working full time. Upon making a telephone call to Jason, he provided the necessary hauling to keep my drivers working at full pay. I honestly don't believe my company would still be operating today without that help during a critical time in industry.

In addition to the influence Jason had on me and my business, I witnessed his generosity within Somerset County's communities. Jason has been a major donor to athletic programs within various school districts, contributions and land development for the benefit of several volunteer fire

HCNR0000166

departments, and countless donations to fundraisers/basket raffles for individuals suffering hardship and non-profit organizations. Regardless of the current situation, Jason continues to be an active contributor of his community and pays it forward whenever possible.

I want to thank you for taking into consideration my perspective of Jason Svonavec . If you have any questions pertaining to my characterization of Jason, please do not hesitate to contact me.

Sincerely,

James F Barron

# EXHIBIT 17

HCNR0000168

Sydney Beam
438 Trolls Lake Road
Somerset, PA 15501
Sydneybeam2@gmail.com
(814) 289-6938
June 21, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of Jason Svonavec. Jason married my mother when I was 4 years old, and while he never aimed to replace the duties of my father, he chose an equally important role in my life; one of mentorship and advisory. I have always been able to count on his unbiased advice when needed most. He has been a guiding light for hurdles such as major home repairs, business decisions, relationships, life goals, etc.

After graduating from university in the city at the start of the pandemic in 2020, employment options were more than limited. Instead of watching me struggle from afar, Jason brought me home and created a position for me within one of his companies, Banshee Industries. What was only supposed to be a temporary position ended up becoming a major career decision on my part. I found myself invested in everything Jason and my mother had built from the ground up. Over 4 years later and I'm still here, doing my best to contribute to their legacy.

I will go to my grave believing there is no boss on earth who works harder than Jason, and there are many times I don't wish his position on anyone. Without fault, he works 14-18 hours a day, 7 days a week, and with a phone that never stops ringing, it's hard to imagine how many people count on him. I can say with the upmost certainty that at least 4 out of Jason and Angie's 8 companies would simply not be able to continue on without Jason's presence. He has not only been an inspiration to me from a leadership perspective, but also a parent who I can rely on, through the good times and bad.

Please consider his role in my life and the *countless* others as you discuss his sentencing.

Thank you,

Sydney Beam

# EXHIBIT 18

HCNR0000170



June 30, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Dear Judge Bissoon,

I am the founder of Guy Chemical Company, Inc, a chemical manufacturing business in Somerset, PA, and a current board member of Matrix Adhesives and Job Creators Network. I am writing this character letter in support of Jason Svonavec, who I know has been convicted of Tax Fraud.

I have known Jason his entire life. Jason grew up on the neighboring farm to my family's farm. I have always known Jason to be an upstanding citizen in our community. He is a hardworking individual and entrepreneur who has created many jobs. Jason has always been active in our community, eager to help worthy causes, and someone who I have always been able to rely on for help with local charities and organizations.

I am confident that, regardless of the outcome of his sentencing, Jason will continue to be dedicated to helping our community. Because of these values I know Jason to possess, I ask for leniency on your behalf as you consider Jason's sentence.

Sincerely,

Guy Berkebile
Cell 814-442-2778

**150 Dominion Drive, Somerset, PA 15501**
**Tel 814-443-9455 Fax 814-443-9470 Email: guy@guychemical.com**

# EXHIBIT 19

HCNR0000172

Integrity Coal Sales

610 Pauline Street

Philipsburg, Pennsylvania 16866

RWClawges@comcast.net

814 290 3049

June 20, 2024

Dear Judge Bissoon,

My name is Bill Clawges. I am the Pennsylvania field manager for Integrity Coal International.   I have been with Integrity since its inception in January 1991. I have known Jason and some of his family members for years.  I have been purchasing Jason's metallurgical coal at the rate of two to three trains per month. I can say Jason has always met what he agreed to on specifications.  It was never a worry for me in determining the quality prior to loading.

The relationship between myself and Jason started out professional but developed into I believe a personal relationship over the years.  Jason and his family members have always been gracious to me, my family members and friends.  I have been on trips with Jason and some of his family members. He and family  were always first class in their handling of situations and dealing with others.

I am sorry to hear of Jasons' situation with the courts but know he will handle it with graciousness and professionalism.

Sincerely,

Bill Clawges

Bill Clawges

HCNR0000173

# EXHIBIT 20

HCNR0000174

Timothy Hunt
453 Laurel Falls RD
Meyersdale, PA 15552
Timhunt@unlimitedminerals,com
814.279.4140
6/28/2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA, 15219

Dear Judge Bissoon,

I have known Jason for many years; I have worked for him for over 15 years and consider myself a good friend of his. I helped him run Heritage Coal when he took over and have recently started my own business after being inspired by Jason and his impact on our community. He was a good boss and mentor. I have always seen him go over and beyond with his employees, landowners, vendors, and local community members. He is always striving to please others and helping them out when they need it. With this, I end this letter holding the most admiration and highest honor of respect for Jason Svonavec.

Thank you,

Tim Hunt



# EXHIBIT 21

HCNR0000176



# JEFF IRWIN, D.D.S.
601 Salisbury St.
Meyersdale, Pennsylvania 15552
Phone 814-634-5961

Email: jeffro601@verizon.net

June 24, 2004

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U. S. Courthouse
700 Grant Street
Pittsburg, PA 15219

Dear Judge Bissoon,

I send this letter in support of Jason Svonavec who will appear before you for sentencing in reference to his guilty plea to the offense of Tax Fraud.

As a doctor of dentistry who currently owns and operates my own dental practice for a period of forty-five (45) years and has known Mr. Svonavec professionally for a period that spans over ten (10) years, I was disheartened to learn of his plea to this offense.

I have known Mr. Svonavec to be generous to the Borough of Meyersdale having donated approximately fifty (50) tons of coal to heat the Chief Justice Thomas Saylor Community Center. In addition, he donated and supplied mulch for the entire Paul E. Fuller playground area thus saving funds that the Meyersdale taxpayers would have otherwise been required to pay.

These and other charitable acts on behalf of Mr. Svonavec have supported both the citizens and children of our community.

It is with my respect and thanks to you as you determine a fair outcome in this case.

Sincerely,

Jeff Irwin, DDS

HCNR0000177

# EXHIBIT 22

HCNR0000178

Irvin H. Kimmel Jr.
104 Hereford Lane
Somerset, Pa 15501
Coselivinfarm@gmail.com
814-233-9704
7/11/2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA, 15219

Dear Judge Bisoon,

I am writing this character letter on behalf of Jason Svonavec, whom I have known for 25 years as my former boss and friend. I am pleased to offer my support and to share my observations of his character.

Jason has consistently demonstrated qualities that I deeply admire. Jason is very honest, hardworking, compassionate, generous, and caring. One particular instance that illustrates these qualities is when the school district in which he lives was trying to fundraise for new library books and associated items for the library, he approached us and wanted to purchase everything we needed for the students. I know this to be a factual statement because I was President of the Rockwood Area School District School Board when this was done.

In addition to his commendable character, Jason has also shown remarkable support for our local Volunteer Fire Department, with assisting us with the use of his equipment and resources free of charge and without any recognition. He has had a huge impact on our Volunteer Fire Department, we would not be able to accomplish the things we have without his help and support. This again is a true statement as I am a Fireman on that department.

I am confident that Jason, will continue to make a positive impact and be a responsible and upstanding individual in the community.

Thank you for considering my perspective on Jason. Should you require any further information, please do not hesitate to contact me.

Sincerely,

Irvin H. Kimmel Jr.

# EXHIBIT 23

HCNR0000180

Dwight "Butch" Lepley
553 Glade City Road
Meyersdale, PA 15552
thelepleys@hotmail.com
814-442-4009

June 23, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
7004 Grant Street
Pittsburgh, PA 15219

Dear Judge Bisoon:

I am writing this character letter on behalf of Jason Svonavec whom I have known since he was a teenager. I knew his father through business dealings and got to know Jason. I had multiple business transactions with Jason and hauled coal for him through my company. I am currently retired. Jason also rented farmland from me and always paid me on time and kept my land maintained as he promised by word and a handshake. He has always been true to his word.

Jason leased my coal minerals approximately five years ago and promised to give me the first payment upon receiving the mine permit, which he did.

Jason has consistently demonstrated qualities that I deeply admire. He has positive traits such as honesty, reliability, compassion and is extremely hardworking.

In addition to his commendable character, Jason has also shown remarkable achievements, leadership, and dedication to his community. Jason is highly respected within local communities of Somerset County and has made many donations to community events. Everything Jason does is done neatly and professionally.

I am aware that Jason is facing sentencing by you, upon his guilty plea to the offense of Tax Fraud. I am confident that Jason will continue to be a responsible and upstanding individual in our community. I have no doubt that he will accept whatever is before him and overcome the situation.

Thank you for giving me the opportunity to speak and support Jason on a personal and business level and from a Christian perspective (God always gives a person a second chance).

Sincerely,

Dwight "Butch" Lepley

# EXHIBIT 24

HCNR0000182

Gayla & DeWayne Lewis
140 Romania Road
Meyersdale, PA 15552
(301) 616-1504
June 24, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of Jason Svonavec, whom I have known for over 20 years as a close friend. I am pleased to offer my support and to share my observations of his character.

When Jason bought Heritage Coal, he wanted us to come and work for him in Meyersdale. At that time, we were living in Oakland Maryland, and it was an hour drive to come to work. Once we expressed the hardship placed on us, Jason immediately bought and remodeled a house near the mine for us to live in.

Also, when I had my stroke in 2022, Jason paid for my time off even though Heritage didn't offer short term disability. He was constantly checking in on me and my wife during that scary time. He would come pick me up while I was stuck in recovery and take me for rides along the job. He has always been a person we can rely on, professionally and personally.

Thank you for considering my perspective on Jason. Should you have any questions, please don't hesitate to contact me.

Thank you.


DeWayne and Gayla Lewis

# EXHIBIT 25

HCNR0000184

Christopher D Robertson

325 Fike Hollow Rd

Meyersdale, PA 15552

301-876-0783

07/12/2024


Honorable Cathy Bisson

United States District Court Judge

Western District of Pennsylvania

Joseph F. Weis, Jr.

U.S. Courthouse

700 Grant Street

Pittsburgh, PA 15219


Dear Judge Bisoon,

I am writing this character letter on behalf of Jason Svonavec, whom I have known for many years. I met Jason several years ago when he asked me to come work for him and from there we became pretty good friends. I am pleased to offer my support and to share my observations of his character.

Jason has always been a great guy not just to me but anyone around him. He is dependable, reliable, compassionate and he is also a great leader. A few years back I needed back surgery Jason checked on me consistently, offered to help me any way that he could. I have witnessed Jason offer help to many people in need and not just monetary wise.

HCNR0000185

In addition to his commendable character, Jason has also shown his dedication to his community. He generously donates to so many causes within the community.

I am confident that Jason will continue to make a positive impact and be a responsible and upstanding individual in the community.

Thank you for considering my perspective on Jason. Should you require any further information, please do not hesitate to contact me

Sincerely,

Christopher D Robertson

HCNR0000186

# EXHIBIT 26

HCNR0000187

Jeremiah C. E. Rock
277 Hillvale Rd
Somerset, PA 15501
lcerox78@gmail.com
814.233.0242 – cell
June 21, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of Jason Svonavec, whom I have known for 35 years.
Growing up, I spent many of my teenage years with him. I am pleased to offer my support and to
share my observations of his character.

I have seen Jason demonstrate his compassion for people in my own life. During the biggest
tragedy of my life, the loss of my 16-year-old son, Jason was there to support and encourage me.
I remember the feeling I had when Jason came and spent hours talking to me. Even though he
had his own business to take care of, he took the time to support me in my darkest moment.

In addition to his compassion, I also know Jason to be trustworthy, generous, and dedicated to
his family. As a loving father, I have seen Jason interact with his own son. Furthermore, He has
always been generous to his community.

I am confident that Jason will continue to make a positive impact on people around him and our
community.

Thank you for considering my perspective on Jason Svonavec. Should you require any further
information, please do not hesitate to contact me.

Sincerely,

Jeremiah C. E. Rock

HCNR0000188

# EXHIBIT 27

HCNR0000189

Tom Schachner
317 Blue Run Road
Cheswick, PA 15024
Gopitt@live.com
412-980-9711
July 9, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA, 15219

Dear Judge Bisoon,

      I am writing this character letter on behalf of Jason Svonavec, whom I have known for over 35 years. I originally met Jason as a young boy during my frequent visits to the family farm. Back then I was a friend of his father Rick, which allotted me the opportunity to spend time with Jason at a young age. I have had a relationship with Jason since then and am pleased to offer my support and to share my observations of his character.

      Jason Svonavec has consistently demonstrated many character qualities that include Jason being hardworking, giving, compassionate and genuinely interested in other people's well-being. One example of this was Jason's sincere interest he displayed in my children's lives/careers during a recent social event we attended. He took time getting to know them, offering sound advice and perspective on life that not many people in his position would take the time to do. They were both impressed and appreciative of Jason's sincere interest in them.

      Another notable quality about Jason that has always stood out to me is his dedication to his community and the people that live and work there. A recent example of this was the leadership role Jason took in the successful fund raiser for the Rockwood Veterans Community Park project. Without Jason's leadership and matching donations, this project would never have been completed.

      I am confident that Jason will continue to make a positive impact and be a responsible and upstanding individual in the community.

      Thank you for considering my perspective on Jason. Should you require any further information, please do not hesitate to contact me.

Sincerely,

Tom Schachner

# EXHIBIT 28

HCNR0000191

Ronald Schmuck
1146 Scullton Rd.
Rockwood, PA 15557
(814) 279-5878
June 25, 2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of Jason Svonavec, my employer and friend of 15+ years. Jason has worked his whole life and built up his companies from nothing. He has always been straight forward and honest with me, given me time off when needed, supported me in the hard times, and lent me a helping hand when asked.

Jason also constantly helps the community. He supports the local fire department by donating his time and equipment to improve their facilities for fundraising, and often helps out the township with repairs and improvements. I truly feel that he has helped this area grow economically by providing jobs with good pay and benefits.

Thank you for considering Jason's character during sentencing. Should you have any questions, please don't hesitate to contact me at the number above.

Thank you,

Ronald Schmuck

# EXHIBIT 29

HCNR0000193

My name is Mark Schrift. I am Jason's Brother in law.
For the first Part of my marriage, I didn't know
Jason very well, because we lived an hour away!
Then in the summer of 2020, my job in the wood
Industry was starting to get shaky. We were losing
are business to the foreign market. I was at that
Job for 30 years and needless to say I was Scared
at finding a new Job at 49. I approached Jason
and asked him for a Job. He called me about a
month later and offered me one. I was blessed
to get a job from Jason. I think he is a good
business man and he treated his employes
very good. Medical, retirement + bonus at the end
of the year. Plus train Bonus. So when you ask me
What do you think of Jason? my answer is
he was good to us employes and also good to are
small towns + are community as a whole!!
Schools, fire company + veterans in are area!
As of the last 3 years I have gotten to know him
better.. The sacrifice he put forth into his business
and employes + hard work ethic describes him
best!! In saying that I am blessed + my
other Co workers are thankfull for the job he gave
us All!! In the winter of 2024 Jason sold his
business and I can say that as are of his employes.
We were sad!! When you have same are thats good
to you all, He is hard to forget!

Mark H Schrift
814-915-4561

# EXHIBIT 30

HCNR0000195

Jeffrey C. Smith

11607 Hoffman Hollow Rd, SW

Frostburg, MD, 21532

Smittyjeff88@gmail.com

301-784-6717

July 2, 2024

Honorable Cathy Bisoon

United States District Court Judge

Western District of Pennsylvania

Joseph F. Weis, Jr.

US Courthouse

700 Grant Street

Pittsburgh, PA, 15219

Dear Judge Bisoon,

I am writing this character letter on behalf of Jason Svonavec. I have been employed as a truck driver for over 30 years and have worked for Jason for 4 years. I am aware that he is facing sentencing for the offense of tax fraud and I would like to offer my support and share my observations on his character.

While working for Jason he has consistently demonstrated admirable qualities. While handling the many responsibilities of a running a business, he is supportive of his employees and is always just a phone call away if needed. Due to family obligations, I initially worked part-time when I started with his company. Jason worked with me and allowed me the flexibility I needed until I could work full time. His support extends beyond work and can be seen in his generosity to his employees. The employee Christmas party that he sponsors every year provides not only plenty of food and refreshments but also gives employees a chance to win various prizes, some of which are large, expensive items that employees would not be able to purchase themselves. It is the highlight of the year for some and just one example of his kindness. Another example is his willingness to provide financial assistance to employees in need. I know of one employee who needed to replace his car and Jason helped him. I'm sure there are other instances such as this one but they are not shared as he is not one to brag about his generosity.

In addition to his admirable character, Jason has demonstrated leadership as he has worked hard to build his business. While he has been successful he still remains rooted in his community by sponsoring events, providing financial donations, and taking the time to stop and talk to friends and neighbors. I am confident that Jason will continue to make a positive impact on the community.

Thank you for considering my perspective on Jason. Should you require any further information, please do not hesitate to contact me.

Sincerely,

Jeffrey C. Smith

HCNR0000197

# EXHIBIT 31

HCNR0000198

June 11, 2024

To:  The Honorable Cathy Bissoon

700 Grant St. #3250
Pittsburgh, PA 15219
Re: Letter of reference for Jason Svonavec

Dear Judge Bissoon:

This is a letter of support for Jason Svonavec who is scheduled for sentencing in your courtroom in Johnstown, PA on August 14, 2024. My name is Michelle Sredy. I am a local pediatrician practicing in Somerset and Johnstown, PA since 1995. Both Jason and I grew up in the area surrounding Somerset, PA with each of our families engaging in the most common local industries of the time: farming and mining. Because of our common background, I have known Jason and his extended family since my childhood. During this time, he has demonstrated himself to be a hard-working member of an equally hard-working family. The Svonavec family and Jason, himself are well known in the community for their willingness to help in times of crisis. When my family's barn burned in during my late teen years, they were one of the first to lend the heavy equipment needed to contain the perpetually smoldering hay fire and to contribute the hay that was lost to keep our herd fed through the following winter. I personally, have been the recipient of Jason's willingness to lend a hand, equipment and expertise when as recently as last month I was faced with rebuilding a fence on my late parents' farm (a subject on which I, like most pediatricians, have no training and little experience).

Beyond the personal level, Jason has contributed to this community by supporting many of our local fire departments --which in this area of the state are all volunteer groups with no professional fire-fighting staff. To this end he has provided financial and/or funding raising support to five of these organizations specifically, the Garrett, New Centerville, Friedens and Somerset volunteer fire departments, and in addition to monetary contributions has provided ongoing funding raising infrastructure for the Rockwood fire department. The survival of these departments is vital to the health of our area. He has contributed the funds for the formation of a library at the local Rockwood Elementary School.

In contrast to what might be general impression of a former member of the coal industry, he has an interest in the land conservation and through his former company, Heritage Coal, has won awards for mining land reclamation. He continues to manage the forested areas on his property (harvested unsustainably by prior owners) with a forestry plan and provides and example of sustainable forest management, which is an interest I share. He and his wife have been high level supporters of the Elephant International Conservation Center extension of the Pittsburgh Zoo, which is located in Fairhope, in southern Somerset County.

I humbly request your leniency in sentencing, in consideration of the huge part that Jason has played and continues to play in the health of the local community.

Sincerely,

Michelle Sredy, MD

# EXHIBIT 32

HCNR0000200

June 25, 2024

Honorable Cathy Bissoon

United States District Court Judge

Western District of Pennsylvania

Joseph F. Weis, Jr.

U.S. Courthouse

700 Grant Street

Pittsburgh, PA, 15219

Dear Judge Bisoon,

My name is Spencer Svonavec. I am writing to you in support of my father Jason Svonavec who will before you for sentencing in August.

I was blessed to have wonderful childhood. We are a close family. My mom and dad raised us as Christians with strong faith and with work ethics and compassion.

Dad taught me trade skills like running equipment and mechanics and he taught me how to farm and care for animals and the land. He also taught us to be a good neighbor and help people that are struggling. He not only taught us this, he did this every day.

I admire how much his employees and the community respect and appreciate him. He has helped people for my whole life.

I own my own business since 2021 and I have grown it to 13 employees. The career and journey I have would not be possible without my dad's guidance. I talk to my dad every day for advice. He is a huge part in keeping my company running and keeping everyone employed. I look at all my employees as family to take care of and they look at us like family too.

For myself and for all the people that my dad has taken under his wing and helped change their lives for the better, I ask you to please consider the good and compassion in him.

Thank you for reading my letter,

Sincerely,

Spencer Svonavec

# EXHIBIT 33

HCNR0000202

6-24-24

To whom it may concern,

My name is Jason Witt i was hired by Jason in December of 2020 for a plant operator position at heritage coals. In the last roughly three and a half year that I knew Jason it seemed like I knew him all of my life he was a great boss when I worked for him & is also a great friend. At work he was always concned about our safety and if we needed anything. Jason was also condened about his employees families, asking how they were doing. Also Jason & his wife support the local schools & local communities.

Jason P. Witt   6-24-24

HCNR0000203

# EXHIBIT 34

HCNR0000204

April 19, 2024

The Honorable Judge Bissoon
US Courthouse
700 Grant Street
Pittsburgh, PA 15219

Regarding Jason Svonavec

Dear Judge Bissoon

      Jason has been an amazing son-in-law in so many ways. He is such a hard worker, provides for his family and helps anyone he can who is in need. Sometime around 2002/2003, the Rockwood Alliance Church was being built. Jason asked the church board if they needed the parking lot paved. He did it, and wanted it to be anonymous. He was and still is that kind of guy, always ready to lend a hand even when he isn't asked. We can't begin to count the times he has volunteered his time and equipment to help the communities around the area. Places like the local fire departments, Meyersdale library and police department, local schools, the Veterans and community park in Rockwood and the Shanksville Patriot Park just to name a few. He goes above and beyond in everything he endeavors and is an all-around kind and caring guy. We hope you will take into consideration Jason's character when issuing the sentence. Thank you for taking the time to read this letter.

Sincerely,

Cenneth & Dorothy Younkin

# EXHIBIT 35

HCNR0000206

Brandon Phillips
Project Manager
Philips Brothers Construction
118 Insanity Lane
Vine Grove, Ky, 40175

Brandon@phillipsdirt.com
(270) 272-9014
July 25, 2024

The Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA, 15219

Dear Judge Bisoon,

I am writing to provide a character reference for Jason Svonavec, whom I have had the pleasure of knowing for 10 (ten) years. As a project manager at Phillips Brothers Construction, I have had numerous opportunities to collaborate with Jason and witness his outstanding character and dedication.

Beyond his professional contributions, Jason is deeply committed to our community, particularly in supporting initiatives that benefit children and families. As a key organizer of our nonprofit county fair, I have had the privilege of seeing Jason's generosity firsthand. He has consistently donated his time, resources, and expertise to ensure the success of our fair, which plays a crucial role in providing educational and recreational opportunities for local families.

Jason's contributions go beyond financial support, his dedication to creating memorable experiences for children and fostering community spirit reflects his genuine compassion and commitment to making a difference.

In my interactions with Jason, I have witnessed his integrity, reliability, and unwavering dedication to serving others. His positive influence on our nonprofit county fair and the broader community underscores his exceptional character and willingness to go above and beyond for those in need.

I understand the current circumstances surrounding Jason, and I believe it is important to highlight his outstanding contributions to our community. I am confident that he will continue to positively impact our community and uphold the values of integrity and generosity that he consistently demonstrates.

Thank you for considering my perspective on Jason's character. Should you require further information or have any questions, please do not hesitate to contact me at (270) 272-9014 or Brandon@phillipsdirt.com.

Sincerely,

Brandon Phillips
Project Manager
Phillips Brothers Construction

HCNR0000207

# EXHIBIT 36

HCNR0000208

Kevin W. Hay
5360 Kingwood Road
Markleton, PA, 15551
Kevinhay50@yahoo.com
814 – 483 – 0466


Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
U.S. Courthouse
700 Grant Street
Pittsburgh, PA, 15219


Dear Judge Bissoon,

I am writing this character letter on behalf of Jason Svonavec, whom I have known for a number of years but have gotten to know better in the last couple of years. I wish to share with you why I am offering my support and what I see that makes him an important person to the community he lives in.

I am president of the local fire department, New Centerville and Rural Volunteer Fire Company, and I am not sure what we would have done a couple years ago without Jason's help. In early 2022 the fire company purchased a new engine to replace our first out engine that had been giving us numerous problems. That engine cost us around $500,000.00. In couple months a farm that bordered our jubilee grounds also came up for sale. We felt this ground was important to us to continue having our largest fundraiser that largely funds our fire company threw the year. We were able to purchase the farm for $500,000.00 also. While we concerned about these purchases but we felt the community would continue to support us. At this point we rented a lot of ground for our Jubilee. One part of ground that we rented was very important that it was where our pulling track ended and was needed to continue to have our pulls that are a very big draw for people coming to our event. When that land owner found out we had purchased the farm that we did, he informed us that we had two choices, one was to sell him ground or two we could not use his ground any longer. This was just months

HCNR0000209

before our Jubilee. While we decided not to sell him ground, we were not sure what we would do so that we could continue to have our pulls and not disappoint our community. Within a couple days Jason reached to me that he would like to build us track right away, but he wanted to build us a bigger and better track. This was so we could bring larger pulling teams in and bring something totally new to the area. Jason donated all the equipment and time to build us a beautiful track that cost us nothing. At this time, I had several meetings with Jason as he shared his knowledge on pulling and what would bring people into our events to help us grow. We named the track The Heritage Track, to represent Jason and his family's long history of helping the fire department.

Jason helped us start a weekend pull called the Fire Cracker 300. At this pull he has helped bring people to the area that we would never have got. Pullers that he knows comes from all over the eastern part of the U.S. to pull on this track. He came out and helped work the track and get it ready for each pull. He not only brings equipment, but he helps to run it.

This year he again helped at the pulls, but he also helped to build roads on the property we bought. These roads don't just help doing our event he also built us access to a pond that we now own. This will give us another place to get water at doing a fire. In our area we do not have access to hydrants and having accessible water sources to get our trucks into is very important.

He has offered his equipment during emergency calls when we have needed to lift heavy pieces of equipment. Jason has made a commit to the committee he lives in and he has made a commit to our small fire company in everything we do and he has kept his commit to us every time. Without his dedication to helping us we would never have a track and development on our new property yet.

Thank you for your time to for reading this letter.

Sincerely
Kevin Hay

Kevin W. Hay
President
NC+ RV&Co

# EXHIBIT 37

HCNR0000211

Bryan Berkebile
354 Possum Hollow Rd.
Latrobe, PA 15650
berk329@gmail.com
724-640-7879
8/5/2024

Honorable Cathy Bissoon
United States District Court Judge
Western District of Pennsylvania
Joseph F. Weis, Jr.
US Courthouse
700 Grant Street
Pittsburgh, PA 15219

Dear Judge Bissoon,

I am writing this character letter on behalf of my friend Jason Svonavec who I have known for eight years. I am pleased to offer my support and to share my observations of his character as the person I know.

Jason has shown remarkable qualities in which I admire. His role as a leader when I first met him on one of his jobsites was outstanding. Jason knows every task at hand and has the upmost respect for and from his coworkers. The most interesting part of spending time with him that day was that every person that approached Jason with a job-related issue he made the time to hear the employees through and worked with them in resolving the matter at hand. It's not often you work with a supervisor of a company that makes the time to hear someone through start to finish and to work towards an immediate resolution. The amount of time and money he has donated to all aspects of the community is second to none.

I am confident that Jason will continue to try his best to be a leader and help his employees, communities, families and friends in any way possible. I never met another person like Jason that ask about everyone's well-being no matter the situation.

Thank you for considering my perspective on Jason. Should you require any further information please don't hesitate to contact me at your earliest convivence.

Sincerely,

Bryan Berkebile

# EXHIBIT 38

HCNR0000213



Gabrielle N. Morella
gnmorella@morellalaw.com

August 5, 2024

The Honorable Cathy Bissoon
UNITED STATES COURT
WESTERN DISTICT OF PENNSYVLANIA
Joseph F. Weis, Jr. U.S. Courthouse
700 Grant Street, 3rd Floor
Pittsburgh, PA 15219

Dear Judge Bissoon:

I have known Jason Svonavec for over one year in a professional setting. Jason's relationship
with my organization is that of a client. As his business and family attorney, we have worked
many hours together on several personal and business matters from estate planning and real
estate matters to various matters concerning Jason's companies.

I am happy to attest to the quality of Jason's character and integrity without reservation. He is
very genuine and a well-respected member of his community. Jason possesses many exceptional
qualities that speak to his integrity. He is honest, responsible, hardworking, family oriented, and
continually gives back to his community.

As long as I have known and worked with Jason, I have developed the utmost respect for him. I
am impressed by his deep commitment to his family and his community, as well as the strength
of Jason's character and his ability to stand by the courage of his convictions.

I would be happy to speak with you at greater length if you so desire. Please feel free to contact
me at your convenience.

Sincerely,

Gabrielle N. Morella

GNM/dlp

HCNR0000214

# EXHIBIT 39

HCNR0000215

*Jesus Christ—The Same Yesterday, Today and Forever*
# Parkview Alliance Church

148 Chapel St.
St. Michael, PA 15951

Phone—(814) 495-8285

August 2, 2024

Dear Judge Bisoon,

I am writing this character letter on behalf of Jason Svonavec whom I've known for about 20 years. Jason and his family attended the Rockwood Alliance Church which I was the pastor. I am pleased to offer my support for Jason and his character.

Jason consistently demonstrated character qualities of honesty, kindness, respect, and truthfulness as I observed as a person in our church congregation. He supported our church in his attendance, finances, and words of encouragement.

In addition, I have known Jason to have a good reputation in the community as a person who supports and helps our area. I feel confident that he will continue to help our community in the future.

If you have any further questions for me, please feel free to contact me.

Thank you for considering my perspective.

Sincerely,

Rev Patrick C. Walsh

# EXHIBIT 40

HCNR0000217



### *Rockwood Alliance Church*

438 Harvest Drive, Rockwood, PA 15557 - Phone: 814.926.2892

August 4, 2024

To whom it may concern,

This letter, on behalf of the Rockwood Alliance Church, is written in support of Jason Svonavec. Mr. Svonavec has been very benevolent and made donations to the church for various projects in the past. His family has attended this church for many years and have been active members of the community.

Sincerely,

*Pam Burkett*

Pam Burkett
Church Treasurer

*Living to Love God & Neighbor*

HCNR0000218

# EXHIBIT 41

HCNR0000219

5/1/2024

RE: Jason Svonavec Character witness

Dear Honorable Judge Bissoon,

I am writing to you as a character witness for my husband Jason Svonavec. Jason is my best friend and the love of my life. I have been blessed to have him in my life for 24 years. He is a genuinely compassionate, kind, talented, dependable person and I need him. And dozens of other people need him as well. I am not always happy to share him with so many others all the time, but I hear their urgency and I see the impact he makes, and I know it's necessary. He takes dozens of calls daily to help solve problems of other people. From employees, vendors, neighbors, friends, family and community, they all lean on him. It would exhaust any average person. But Jason has a strength and resilience that doesn't wear, and it allows him to help and carry the cares and problems of so many others.

Through the years there were many times the phone would ring in the middle of the night or the early morning hours. Calls came from volunteer fireman asking Jason to bring his equipment to contain fire or open a closed road. They came from township supervisors with flooded or washed-out roads in need of equipment and operators. These were never paid jobs. And while Jason is not "officially" an emergency responder, he still jumped out of bed and responded to assist every time. He has donated his equipment, time, and talents to the good of the community more time than I could count. Often these acts go unrecognized.

It is hard to condense everything he does into one letter. I know your time is valuable and I struggled to choose which examples to condense it but still capture his essence. He has done many big grand donation gestures for the community like building roads, paving lots, renovating children's libraries, and building a state of the art pulling track for the volunteer fire department. And I expect others will send letters describing many of them.

But then there are the countless small acts of kindness that go entirely unnoticed and unrecognized by most. Things like stopping to change a stranger's flat tire or pulling drivers out of ditches or snowbanks. I remember a time when we were dating and at an Eat n Park and the older waitress tripped and sent menus flying everything. He walked over to help her up and picked up her menus. It made my heart smile…. I knew he was genuine. Then there is this kid, Brandon, who was born with Cerebral Palsy. He reached out to our office claiming to be Jason's "biggest tractor pulling fan". He follows Jason's pulls on TV because he is too sick to travel. Somehow, even over the TV, Jason draws people to him. Jason took special interest in this kid and sent him free gear. And when Brandon is having a rough time with his medical treatments, he will call our office to get encouragement. He seems to draw strength from Jason.

In addition to all of this, Jason is an amazing and dedicated father and husband. He has been a loving and faithful husband and a solid foundation for our family. He consistently helps and supports our kids in building their lives and careers. He is always in their corner and never waivers from being their biggest advocate. He makes me proud every day. He works tirelessly, often 12+ hour days, 6 days a week, to

HCNR0000220

successfully operate our companies. His devotion to building and expanding them has created over 150 jobs directly. It also supports dozens of subcontractors whose living is completely dependent on the jobs provided by our businesses. And despite all those professional and personal responsibilities and despite working those brutal hours for nearly 3 decades now, he still finds the time and energy to give so much back to the community.

I hope that you will view his lifelong actions as a true representation of his character. And I hope you can confidently see that this tax related charge was limited to one dumb mistake and not a repeated pattern or an established behavior in any way. My prayer is that he is shown the grace and forgiveness that he so consistently gives to the world. On behalf of my family and myself, I beg for your mercy and leniency. Removing him from society would harm the many people that depend on him. My kids, myself, and our family need him. Our businesses need him. And I believe our local community needs Jason.


Angela Svonavec